# ROBERT McCARTER

## *vs.*

# THE BALTIMORE CHAMBER OF COMMERCE.

*Malicious interference with another's trade or contract of employment; "malice"; by-laws of Chamber of Commerce; expelling members who trade with non-members who refuse settlement according to findings of the association.*

Any malicious interference with the business or occupation of another, if followed by·damages, is an actionable wrong.

p. 136

Malice, in its legal sense, means a wrongful act intentionally done.                                                              p. 136

A third party has no right maliciously to interfere with an employment, even where it is only one from day to day.  p. 136

Where there is no particular time **named** for a contract of employment, it is to be assumed that it is terminable at the will of either party.                                        p. 136

A by-law of a Chamber of Commerce provided for the reprimand or expulsion of any member who should deal or trade with any non-member company, firm or individual, who should be posted for refusal to make a settlement for debts due to any of the members of the Chamber of Commerce, according to its rules or findings:  *Held,* that the posting of the name of such a non-member, with a notice calling attention to the said by-law, with the statement that it would be strictly enforced, was Lot such coercion upon the members to prevent their trading with the party so posted, and was not such interference with the rights of such individual, in his trade or business, as to form the basis of an action at law.                              p. 138

*Decided May 5th, 1915.*

Appeal from the Baltimore City Court.   (Soper, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Edward M. Hammond* and *German H. H. Emory* (with whom were *Frank, Emory & Beeuwkes* on the brief), for the appellant.

*Daniel R. Randall* (with whom were *Arthur Geo. Brown* and *R. E. Lee Marshall* on the brief), for the appellee.

Constable, J., delivered the opinion of the Court.

The only question in this appeal is one of pleading, and involves only the sufficiency of the averments of the amended declaration. A demurrer was interposed by the defendant, and upon it being sustained and judgment entered for the defendant for costs, this appeal was taken from that judgment. It will be necessary for a determination of the question to set out quite fully the allegations of the declaration.

It avers that the Baltimore Chamber of Commerce, the appellee, was a corporation, and had extant on the 10th day of February, 1913, and on the day of the filing of this suit, the following section of its charter:

"Section 5. And be it enacted, that the purposes of said corporation shall be to provide and regulate a suitable room or rooms for a produce exchange in the City of Baltimore; to inculcate just and equitable principles of trade; to establish and maintain uniformity in commercial usage; to acquire, preserve and disseminate valuable business information; and to

adjust controversies and misunderstandings between its members and themselves or between them and other persons thereto consenting, which may arise in the course of business."

There is also set out in full section 6 of Article 9 of the By-Laws of the corporation, prescribing the duties of the Executive Committee. There was also in effect the third paragraph of section 11 of Article 9 of the By-Laws, and which was as follows:

"Third—Any corporation, joint stock company, firm or individual not a member of the Baltimore Chamber of Commerce, who shall be accused of any proceedings inconsistent with just and equitable principles of trade, in relation to a transaction had through or with any member of the Baltimore Chamber of Commerce, shall on complaint be summoned before the Complaint Committee and given an opportunity to be heard. Should the Committee be unable to induce a settlement, and the circumstances shall seem to the Committee to warrant, the complaint and all proceedings thereunder shall be referred by the Committee to the Board of Directors, who shall consider the evidence produced before the Complaint Committee, and give both plaintiff and defendant an opportunity to be heard again, and to produce additional evidence at such hearing if either shall so desire, prior to final action in the case; and if, in the opinion of the Board, the charge or charges against said defendant be substantiated, it may, by a vote of not less than two-thirds of all the members present, prohibit said defendant representation on the floor of the Chamber, and any member of the Chamber who shall with knowledge of such prohibition represent or transact business with or on behalf of said defendant, after notice of such prohibition shall have been posted on the bulletin during five days, shall be deemed guilty of wilful violation of the By-Laws, and subject to the

penalties prescribed in section 5 of Article 7, and
such member shall be proceeded against in accordance
with the By-Laws for such violation. All complaints
under this section shall be in writing and addressed
to the Chairman of the Complaint Committee, who
shall cause the same to be served on the defendant,
with notice of the time of hearing."

It is then averred that "because the plaintiff was indebted
unto one of the members of the said corporation in the sum
of eighty dollars, which was a balance due on a note which
was being gradually liquidated by the plaintiff" the corpora-
tion caused to be posted the following notice:

"Robert McCarter, Reisterstown, Maryland. The
attention of members is called to Article 9, section 11,
paragraph 3 of the By-Laws. This rule will be strictly
enforced."

It is then further averred as follows: "And for a long time
prior to the date of the promulgation of the aforesaid notice
on the 10th of February, 1913, and as of the date of the
filing thereof on the 10th day of February, 1913, and since
that date, the plaintiff was employed by certain members of
this defendant corporation, and the said defendant corpora-
tion, through its officials, agents and employees, on or about
the 19th of August, 1913, in accordance with the aforesaid
sections of the Charter and By-Laws hereinbefore set forth,
cited John M. Frisch and Company, H. C. Jones and Com-
pany, G. A. Hax and Company and Sinton Brothers and
Company, by whom the plaintiff was employed prior to the
10th of February, 1913, and the aforesaid firms were directed
to discharge from their employ and to cease further dealings
with the plaintiff, and that some of said firms did imme-
diately discharge from their employ the plaintiff, and that
certain other of said firms did not, and that thereafter the
said board of directors and certain members of the said cor-
poration, did, by intimidation and coercion compel the

remaining firms to discharge this plaintiff from their employ and cease further dealings with him, by threatening to reprimand, suspend or expel said firms, who were members of said defendant, in accordance with section 5 of Article 7 of the defendant's By-Laws." Said section clothes the board of directors with the power to reprimand, suspend or expel, with the consent of a two-thirds vote of the members, any member who has been guilty of a breach of the rules, regulations or by-laws.

It is then charged that, as a result of the illegal action upon the part of the defendant, the plaintiff has been deprived of his position and employment and has been "blackballed and boycotted" by the members of the corporation and has suffered malicious injury.

Stripped of its legal phraseology the complaint of the plaintiff is merely that while employed by several of the individual members of the corporation and being indebted to another of said members, the corporation compelled his employers to discharge him and abstain from further dealings with him under threats, by virtue of a by-law, of themselves being denied the privileges of membership in the corporation. That the posting of the notice under the by-laws was not sufficient to bring about the severance of the relations between the plaintiff and some of the members, but in order to accomplish that end it was necessary to cite the unwilling members before a committee and direct them to observe the by-law. That even then there were some members who persisted in refusing to comply with the by-law and continued the employment of the plaintiff until they were threatened by the board of directors with a reprimand, suspension or expulsion.

The contention of the appellant is, in the language of his brief: "The defendant in procuring breaches of the plaintiff's terms of employment with its members through the coercive means of threatening such employing members with the pains and penalties of Article 5, section 7, of its By-Laws—which included expulsion from the organization and consequent exclusion from the floor of the Exchange—violated the plain-

tiff's legal rights without justification and is answerable therefor in Court for damages thus caused the plaintiff."

It will be noticed that the declaration avers no particular nor definite period of time for the termination of the contracts of employment, and, therefore, it is to be assumed that they were terminable at the will or wish of either party without actionable liability upon the part of either. In other words, a case of hiring from day to day. We do not mean to intimate that because of this a third party has the legal right to maliciously interfere so as to terminate an employment, but only to note that it was the legal right of either employer or employee to bring the employment to an end. And when we use the word malicious we use it in its strictly legal meaning. "Malice," said BAYLEY, J., in *Bromage* v. *Prosser,* 4 B. & C. 255, "in common acceptation, means ill will against a person, but in its legal sense it means a wrongful act done intentionally without just cause or excuse." Or as was said in *Lucke* v. *Clothing, etc., Assembly,* 77 Md. 396, "It is not necessary that such interference should have been malicious in its character. If it be wrongful, it is equally to be condemned, and just as much in violation of legal right."

"Any malicious interference with the business or occupation of another, if followed by damage, is an actionable wrong." *Willner* v. *Silverman,* 109 Md. 341. On the other hand: "It is a part of every man's legal rights, that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice or malice. *Cooley on Torts,* 278. "The exercise by one man of his legal right cannot be a legal wrong to another. * * * Whatever one has a legal right to do another can have no right to complain of." Ib. 688. But the argument of the appellant is that this is not a case of one voluntarily refusing to continue business with him, but a case of one, against his will, being forced by threats and intimidations made by a third party, the appellee, to sever those relations. And this brings us, to our minds,

to the crucial test of the liability of the appellee; whether the by-law in question was, in law, a coercive threat upon the minds of the members of the appellee corporation. If the posting of the appellant by virtue of it did not so amount, then the fact that the corporation directed certain members to observe it under penalty of the enforcement of its provisions, adds nothing to the claim of the appellant.

The question of whether such a by-law is coercive has given rise to a conflict of the authorities. There have been many cases where associations have had by-laws similar, or practically so, to the one in this case, and in some jurisdictions Courts have held the associations liable to parties injured through their enforcement; while in others the opposite conclusion has been reached. See *Bohn Manuf. Co.* v. *Hollis,* 54 Minn. 223; *Delz* v. *Winfree,* 6 Tex. Civil App. 11; *Brewster* v. *Miller,* 101 Ky. 368; *Schulten* v. *Bavarian Brew. Co.,* 96 Ky. 224; *Reynolds* v. *Plumbers Material Protec. Assn.,* 63 N. Y. Supp. 303; *Jackson* v. *Stanfield,* 137 Ind. 592; *Martell* v. *White,* 185 Mass. 255; *Boutwell* v. *Marr,* 71 Ver. 1; *Heim Brew. Co.* v. *Belinder,* 97 Mo. App. 64.

Of the above cited cases we think it only necessary to review that of *Bohn Manuf. Co.* v. *Hollis,* for the reason that in a recent case, *Klingel's Pharm.* v. *Sharpe & Dohme;* 104 Md. 218, this Court has reviewed the facts and approved the finding of the Minnesota Court. In that case a large number of retail lumber dealers formed a voluntary association by which they mutually agreed that they would not deal with any manufacturer or wholesale dealer who should sell lumber directly to consumers at a place where a number of the association was engaged in the retail business, and they provided in their by-laws that whenever any wholesale dealer or manufacturer made any such sale, their secretary should notify all the members of the fact. The plaintiff made such a sale and the secretary made demand upon him for the penalty prescribed by the by-laws, but the plaintiff delayed so long in the payment of the penalty the secretary threatened to send notices to all the members. By the provisions of the

by-law any members who continued dealings with such wholesale dealer was subject to expulsion from the association. The plaintiff applied for an injunction to restrain the sending of the notices, but it was held no action would lie and that there was no ground for an injunction. On the question as to whether the by-law providing for expulsion was coercive the Court said: "But this involved no element of coercion or intimidation, in the legal sense of those terms. * * * Nor was any coercion proposed to be brought to bear on the members of the association, to prevent them from trading with the plaintiff. After they received the notices, they would be at entire liberty to trade with plaintiff, or not, as they saw fit. By the provisions of the by-laws, if they traded with the plaintiff, they were liable to be "expelled;" but this simply meant to cease to be members. It was wholly a matter of their own free choice, which they preferred, to trade with the plaintiff, or to continue members of the association." CHIEF JUDGE McSHERRY in delivering the opinion in *Klingel's Pharm.* v. *Sharp & Dohme, supra,* approved the opinion in the above case and declared: "There was nothing unlawful in this." Under the authority of those cases there was not such an interference with the rights of the appellant by the appellee corporation as to amount in law to a wrongful and malicious interference for which an action will lie.

We are, therefore, of the opinion that the action of the Court below was correct in sustaining the demurrer, because the declaration avers no act which amounts to an unlawful coercion.

*Judgment affirmed, with costs.*