# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 3, 1924.

CHARLES W. BLANKFORD AND WILLIAM G. BLANKFORD, CO-PARTNERS, TRADING AS VAILE & YOUNG,

VS.

WILLIAM K. DUTHIE, ET AL., INDIVIDUALLY AND AS A VOLUNTARY UNINCORPORATED ASSOCIATION, DOING BUSINESS AS AND TRADING UNDER THE NAME OF ALLIED BUILDING TRADES COUNCIL OF BALTIMORE, AND OTHERS.

*Rosenbush & Bernstein* solicitors for complainants.

*Curran & Leach* solicitors for Building Trades Council.

*Maloy, Brady, Howell & Yost,* solicitors for The Benjamin F. Bennett Building Company.

DAWKINS, J.—

In this case an injunction is sought to be obtained by the plaintiffs against the defendants (who are various individuals and labor organizations, save one defendant who is a builder and contractor, the Benjamin F. Bennett Building Company). A demurrer has been filed to the bill by the labor organizations and the Bennett Company

has answered the bill, but has also claimed the benefit of the demurrer filed by the other defendants.

The plaintiff seeks relief on the ground that the defendants except the Bennett Company, have been engaged in a concerted, continuous and uninterrupted effort to persuade owners of property, architects and contractors to either refuse to award contracts for the doing of work in their line of business or by threats and intimidations to persuade that contracts already made, be broken.

It is further charged that a demand was made by the defendants upon the plaintiffs to reorganize their shop and make of it a "closed shop" instead of an "open shop," that they have been conducting, and that they had prevented the plaintiffs from obtaining contracts, alleging that there were many ways whereby workmen could be handicapped and annoyed while at work. That they were told by the defendants representatives in the event that the plaintiffs failed to make a union or closed shop, that they would prevent people from giving business to the plaintiffs and prevent work partly performed from being finished.

That after correspondence and personal interviews between the plaintiffs and the defendant, Bennett Company, said defendant requested "That you suspend all work now being done under your contract, pending your decision in the matter of closing your shop to only union employees * * * our contract was made with you in good faith also and this action implies no lack of confidence in your firm whatever. We are simply the victim of circumstances over which we have no control."

It is also alleged that the M. A. Long Company, builders, awarded a contract for certain work to the plaintiffs. That certain other firms and corporations with whom the plaintiffs have heretofore been doing business have been caused not alone to refuse to make contracts, but to break contracts already made which contracts were entered into in good faith by both parties thereto and by combinations, conspiracy, threats and intimidations have coerced and intimidated all persons with whom the plaintiffs are doing business from contracting with them.

The further allegation is made that although a very large amount of work of the character in which the plaintiff is engaged is to be contracted for at the present time in Baltimore, much of which the plaintiffs feel they would be able to obtain, save for the threats and coercions of the defendants, that will compel the contractors and architects to stop work on all construction in the future unless the demands of the defendants are complied with so that the plaintiffs will be compelled to close their shop and go out of a business which they have most successfully built up during a period of forty years. That this condition will come to pass through the wanton, malicious and illegal acts of coercion and intimidation practiced by the defendants, save the Bennett Company.

The defendants contend that they only did what they had a legal right to do. That no injunction will lie unless the interference with the business of the plaintiffs is caused by an act of the persuader violating a legal right of the other party. That no such state exists. That in effect they claim only the right to strike.

The case was most fully and ably argued. It is to be regretted that the exigencies of the case preclude a more exhaustive examination of the many cases cited, though many of them have been carefully examined. There is not much doubt about the good accomplished by the labor organizations. Save for them many things of advantage to the workers would not have been accomplished. They have a right to combine for mutual advantage and protection.

The right to strike within proper bounds, where no intimidation, unfair interference or boycotting is resorted to certainly has been established. Fair competition is a legitimate exercise of the rights of all. A friend can buy goods or labor from his friend and persuade that friend to deal in a way that seems right and fair with others. Refusal to work is a right of the worker. We can not make him work. Other workers have a right to be freed from interference by others. Persuasion may be used, but it should be free from force, violence and intimidation, and without molestation or obstruction. This is but saying that every one has

a right to do any lawful act he pleases without molestation or obstruction. Because an act not otherwise wrongful, always becomes unlawful if it interferes with another's trade or employment can not be held "A man's right not to work or not to pursue a particular calling or to determine when or with whom he will work is in law a right to trade or work—as he wills." Allen vs. Flood, Eng. App. 1, 168, etc.

True as was stated by the defendant's counsel threats and fraud can not be established merely by using the words. Merely for the pleader to use the words without connecting with some act is useless. Strikes to get better wages are not unlawful, but actual threats with workmen are just as is the boycott, improper.

Under the Maryland Statutes (see Sec. 40, Art. 27, Vol. 3 Code) two or more people can do anything in contemplation or furtherance of trade disputes that one can do and not be in a conspiracy.

Where a contract would have been fulfilled but for the fraudulent representations of a third party, an action will lie.

When a non-union man, who is doing his duty to his employer is discharged in consequence of a threat from a labor organization, that all organizations will be notified that the house of the employer is a non-union one, and thus subjecting it to loss, such interference is wrongful and by such the legal rights of the party are invaded.

Lucke vs. Clothing Cutters & Trim., etc., 77 Md. 406.

The case of McCarter vs. Chamber of Commerce, 126 Maryland 131, cited in supplemental brief of the defendant does not seem to be in line with the present case, since it was merely dealing with their own members for violating their rules of the Chamber of Commerce and not alone with the third party. Whilst many interesting cases have been cited, discussing the questions herein involved from different angles all of which have been considered, yet the one Maryland case which it seems more nearly deals with the questions herein involved is My Maryland Lodge vs. Adt, 100 Md., 238, etc., in which it is stated that every individual has a right to carry on his business in such a manner as he sees fit. In

that right he will be protected by injunction restraining others from combining to boycott such individual and threatening anybody dealing with him with the ill will of organized labor. In that case the defendant, in pursuance of their combination to ruin plaintiff's business notified those who had been accustomed to deal with the plaintiff that they would be boycotted if they continued to do so—that the patronage of customers was discontinued because of the threats made by the defendants and that his business has been greatly diminished in consequence of the acts of the defendants.

In the present case certainly unnecessary injury was done to third persons. In fact the business of the plaintiff may be entirely dissipated. Malice must be implied under this state of affairs, even though it be business competition, which whilst it might benefit the defendants, will work ruin on the plaintiffs unless they comply with the defendant's demands at a time with the plaintiffs employees as well as the persons with whom they have now or intended to have in the future, contracts, are in every way satisfied.

There is nothing that the plaintiffs can do to protect themselves, save by permitting the defendants to regulate in some way the conduct of their shop. The statement of James McCrea and Son, mechanical engineers and contractors in re School of Hygiene that that work could not proceed until "a satisfactory settlement" was made with the Building Trades Council and the permission of the union had been obtained. The letter of Benjamin F. Bennett & Company already cited that they wish to cancel its contract. The affidavit of M. A. Long that the plaintiff would not be allowed to work on the School of Hygiene contract unless Long was able to compel the plaintiff to unionize its shop. If this could not be done, the contract would have to be cancelled.

These things would seem to be threats and coercion of sufficient force if true, to justify the issuing of the injunction and its continuance until final hearing.

A full disclosure of all the facts and circumstances may present the matter in such a way as to show that the defendants have not done these things alleged against them, if so the bill

will be dismissed. The bill should be answered.

The defendant Bennett & Company do not seem to be charged with having had any part in the matter alleged, in the bill tending to establish their participation in any threats or conspiracies. It has only breached its contract (whether rightfully or wrongfully). It is doing and has done nothing more. Breaking a contract is no reason for invocation of the extraordinary remedy of injunction, so that the demurrer would be sustained so far as it is concerned, but they have already answered the bill. There would appear to be ample remedy at law to right any damage for the contract breach, if such there be.

The demurrer is overruled for the reasons above given.