JOHN LENORE & COMPANY, Model Distributing Company, John P. Lenore and Robert E. Livingston, Plaintiffs-Appellants,

v.

OLYMPIA BREWING COMPANY, Defendant-Appellee.

No. 76–1640.

United States Court of Appeals, Ninth Circuit.

March 17, 1977.

Lee R. Rydalch, Robert G. Steiner, Luce, Forward, Hamilton & Scripps, San Diego, Cal., argued, for defendant-appellee.

Before TRASK and ANDERSON, Circuit Judges, and TAKASUGI,[*] District Judge.

**J. BLAINE ANDERSON, Circuit Judge:**

This is an interlocutory appeal under 28 U.S.C. § 1292(b) in a lawsuit arising out of the acquisition of certain assets of the Theodore Hamm Company by Olympia Brewing Company and the subsequent termination by Olympia of the former wholesale distributors of Hamm's brand beer.

## ISSUE

Does a former beer distributor have standing under Sections 4 and 7 of the Clayton Act [15 U.S.C. §§ 15 and 18] to sue the manufacturer-supplier who has terminated the distributorship in favor of its own distributorship network?

The district court below held that plaintiff beer distributors lacked standing to sue under Sections 4 and 7 of the Clayton Act and granted Olympia's motion for summary judgment. Plaintiffs appealed.[1] We affirm.

## FACTS

Originally, Hamm's beer was owned and operated by the Hamm family. However, in 1965 the operation was sold to Heublein, Inc. and operated as a wholly-owned subsidiary. Due to adverse financial conditions, Heublein publicly announced its intent to divest itself of the Hamm's Brewing Com-

James O. Sullivan, Christopher Q. Britton and Janeen Kerper, Sullivan, Jones & Archer, San Diego, Cal., argued, for plaintiffs-appellants.

[*] The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. On September 28, 1976, the appeal of Robert E. Livingston and Model Distributing Company was voluntarily dismissed. Therefore, only John Lenore and John Lenore & Company remain in this appeal.

pany. Plaintiffs John Lenore & Company (Lenore) and Model Distributing Company (Model) got together with several other Hamm's distributors and purchased the Hamm's operation through a corporation they organized under the name of Brewers Unlimited, Incorporated, later changed to Theodore Hamm Company.

Operations by the distributor group proved to be unprofitable, and by 1975 a merger or outright sale was sought for the Hamm's operation. On February 28, 1975, certain assets of Hamm's, including the Hamm's label and a brewery in St. Paul, were sold to the defendant Olympia Brewing Company (Olympia). Olympia continued to manufacture and distribute both Hamm's and Olympia beer. For the first six weeks after the purchase of Hamm's, Olympia continued to distribute the Hamm's brand through the previous Hamm's distributors. However, by letter dated April 12, 1975, Leopold F. Schmidt, President of Olympia, informed Model and Lenore that Olympia had decided to terminate them as Hamm's distributors and to appoint other distributors to serve their respective markets. While Model and Lenore were terminated as distributors of the Hamm's brand, it should be noted that both were still able to distribute other brands of beer produced by other breweries.[2]

This action was filed on April 30, 1975, and originally had five counts: Fraud and deceit (Count I); specific performance (Count II); breach of contract (Count III); attempted monopolization under § 2 of the Sherman Act (Count IV); and violation of § 7 of the Clayton Act (Count V).

On October 17, 1975, Olympia moved for summary judgment as to Counts II, III, and V. Plaintiffs consented to summary judgment on Counts II and III,[3] but strongly opposed summary judgment on Count V, the § 7 Clayton claim. The district court heard the motion as to Count V on December 1 and 9, 1975, and granted summary judgment on Counts II, III and V by order entered on January 6, 1976.

Following entry of the district court order granting Olympia's partial summary judgment motion, plaintiffs noticed a motion for stay of further proceedings and entry of judgment under Rule 54(b), or, alternatively, for certification under 28 U.S.C. § 1292(b). This motion was denied on January 26, 1976. On February 12, 1976, the district court issued an order which vacated the order of January 26, and certified the order granting partial summary judgment for immediate appeal under 28 U.S.C. § 1292(b). On March 23, 1976, this court issued its order granting plaintiffs permission to appeal under 28 U.S.C. § 1292(b).

■ The trial court granted Olympia's motion for summary judgment on the grounds that Lenore lacked standing to sue. The principal question that arises on a motion for summary judgment is whether any factual issues of legal significance, the "material facts," remain to be resolved at trial. Rule 56(c), F.R.Civ.P., provides that summary judgment shall be granted where the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not enough for the party opposing the motion for summary judgment merely to point to disputes of fact. As this court observed in *McGuire v. Columbia Broadcasting System, Inc.,* 399 F.2d 902, 905 (9th Cir. 1968):

> [T]he showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.

---

**2.** The record shows that besides Hamm's, Lenore also distributed Schlitz, Burgermeister, Falstaff, Schlitz Malt Liquor, Old Milwaukee, Colt .45, A–1 Beer, Ballantine, Tuborg and Carling Black Label. Model distributed Pabst, Carling Black Label and Country Club.

**3.** On March 25, 1976, Lenore also dismissed with prejudice Counts I and IV of the complaint, leaving only Count V to be contested in this appeal.

The contested legal theory in this case is Lenore's standing to sue under Sections 4 and 7 of the Clayton Act. Standing is a question of law for the court to determine. *In re Western Liquid Asphalt Cases,* 487 F.2d 191, 199 (9th Cir. 1973), *cert. denied,* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974). Even assuming that all of the facts as presented by Lenore are true, we find that the trial court correctly ruled that Lenore lacked the proper standing to sue. Once this was decided, then no "material facts" remain to be presented at trial. Therefore, the granting of Olympia's motion for summary judgment was proper.

## REQUIREMENTS FOR STANDING

█ While it is well-settled in this circuit that there is a private cause of action for damages under §§ 4 and 7 of the Clayton Act, *Helix Milling Co. v. Terminal Flour Mills Co.,* 523 F.2d 1317, 1323 (9th Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976), before a private person can avail himself of these antitrust statutes, he must have standing to sue. He must be the person injured, as well as the person Congress had intended to protect when this antitrust legislation was passed.

█ Determining standards for standing under these antitrust statutes has proved a perplexing problem for the courts.[4] Examination of these anti-merger and treble damage provisions shows that § 7 of the Clayton Act proscribes mergers whose effect "may be to substantially lessen competition, or to tend to create a monopoly." It is primarily a prophylactic measure intended to stop anti-competitive corporate mergers and acquisitions *before* those events could cause harm. *See United States v. E. I. Dupont de Nemours & Co.,* 353 U.S. 586, 597, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957).

█ On the other hand, § 4 is basically a remedial provision. It provides treble damages to "any person who shall be injured in

his business or property by reason of anything forbidden in the antitrust laws . . . ." While § 4 does play an important part in penalizing and deterring wrongdoing, *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), it was designed primarily as a remedy. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* —— U.S. ——, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). The Supreme Court, in *Brunswick,* observed that: "Intermeshing a statutory prohibition against acts with a potential to cause certain harms with a damage action intended to remedy those harms is not without difficulty." (—— U.S. at ——, 97 S.Ct. at 696)

In *Brunswick* the Supreme Court was faced with the problem of whether a certain injury to a business fell within the protection of the antitrust laws. Brunswick Corp. was a "giant" in the bowling industry and had acquired some defaulting bowling centers in the plaintiffs' market area. These centers were defaulting on payments owed for bowling equipment purchased from Brunswick. Had the centers been allowed to close, plaintiffs' business and profits would have increased due to a higher share of the market. Plaintiffs alleged that Brunswick's acquisition of the defaulting bowling centers might substantially lessen competition in violation of § 7. They sought treble damages for lost profits under § 4. A jury awarded damages and the trial court trebled them. The Supreme Court reversed, finding that: "it is inimical to the purposes of these laws to award damages for the type of injury claimed here." (—— U.S. at ——, 97 S.Ct. at 697).

The court then went on to elaborate some of the requirements that a plaintiff must meet before being allowed a damage recovery due to a § 7 violation. The court said:

> We therefore hold that for plaintiffs to recover treble damages on account of § 7

---

4. See the review and analysis of this problem area, Lytle & Purdue, *Antitrust Target Area Under Section 4 of the Clayton Act; Determination of Standing in Light of the Alleged Antitrust Violation,* 25 The American University Law Review 795, Summer 1976, and concluding that the "target area" concept serves best "as a logical test capable of consistent and equitable application."

violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations . . . would be likely to cause.' *Zenith Radio Corp. v. Hazeltine Research, Inc.*, supra, 395 U.S. [100], at 125, 89 S.Ct. [1562], at 1577 [, 23 L.Ed.2d 129]. (—— U.S. at ——, 97 S.Ct. at 697)

▮▮▮ This court has adopted the "target area" approach as a prerequisite to standing in antitrust cases. There must be an identification of the affected area of the economy which is the target of the alleged anticompetitive conduct. And, it must be determined that the alleged injury was in that area. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 426 (9th Cir. 1975); *In re Multidistrict Vehicle Air Pollution M. D. L. No. 31*, 481 F.2d 122, 129 (9th Cir.), *cert. denied, sub nom. Morgan v. Automobile Manufacturers' Ass'n*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973).

The analysis of standing requirements under §§ 4 and 7 does not end here, however. It is not enough to confer standing that plaintiff just prove some injury and show that this injury is within the affected area of the economy. Antitrust violations admittedly create many foreseeable ripples of injury to individuals, but the law has not allowed all of those merely affected by the ripples to sue for treble damages. Congress, in passing this legislation, did not intend to protect every possible or potential injury which could remotely be connected to a corporate merger or acquisition.

Further analysis of the additional requirements needed to confer standing on a plaintiff for a § 4 and 7 claim is set out in *Kirihara v. Bendix Corporation*, 306 F.Supp. 72 (D.C.Haw.1969), which deals with a factual situation quite similar to the instant case. In *Kirihara* the plaintiff was the exclusive distributor for Fram oil filters in the State of Hawaii. In 1967 the Fram Corporation was acquired by the Bendix Corporation. As a result of the acquisition, plaintiff was terminated as a Fram distributor and the Fram line was awarded to the Bendix distributor in Hawaii. The plaintiff subsequently filed a complaint, alleging, among other things, violations of §§ 4 and 7 of the Clayton Act. After a thorough analysis of the legislative history of § 7, the trial court enunciated the following requirements for standing under §§ 4 and 7:

> In order to have a § 4 cause of action based upon an alleged § 7 violation, not alone must the claimed injury be directly and proximately caused by the proscribed acquisition, but also the injured must be one of the components of the competitive infra-structure of the relevant market involved in the complaint, be it in any section of the country, and the effect of such injury upon that component must validate the reasonable probability that a substantial anti-competitive effect upon the viability of competition in *that* market will flow from the condemned acquisition. An injury to a component of minimal, i. e., non-effective, competitive significance therein, was not intended by Congress to come within the perimeter of the above 'target area' of a § 7 violation.

306 F.Supp. at 90.

Applying the analysis of *Brunswick*, *Blankenship*, and *Kirihara, supra*, to the facts and pleadings of this case as set forth by Lenore, we hold that Lenore lacks standing to challenge Olympia's acquisition of Hamm's and to recover treble damages.

▮▮▮ The relevant market area of the economy with which we are concerned in this case is the production and sale of beer in the Western United States. While we do concede that Lenore has suffered an injury to his property and business interests and that this injury did indeed occur within this area of the economy, we agree with the district court's findings that the terminations of the distributorships were not directly and proximately caused by the chal-

**500**

lenged acquisition. Even though Lenore's injury may have ". . . occurred 'by reason of' the unlawful acquisitions, it did not occur 'by reason of' that which made the acquisitions unlawful." *Brunswick, supra,* —— U.S. at ——, 97 S.Ct. at 697. The terminations were an incidental matter which the merger may have made possible, but certainly did not cause. All Lenore really alleges is that because Olympia purchased the Hamm's brand, Lenore was replaced in favor of other distributors. This is insufficient to make out a case under § 7 which is concerned with competition, not competitors. *Brown Shoe Company v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

Lenore is not within that class of persons whom Congress intended to protect by § 7. If we were to assume that Olympia's acquisition of Hamm's did present a § 7 violation, it would only do so because of a probable lessening of competition in the production of beer. A competing manufacturer might have the right to bring a private action against Olympia. Therefore, while Lenore has proved an injury, he has not shown that he has suffered an ". . . *antitrust injury* . . . of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick, supra,* —— U.S. at ——, 97 S.Ct. at 697. (emphasis in original). We find there is just no direct relationship between the acquisition and the injury.[5]

■ Another requirement for standing is that Lenore be a component of the competitive infrastructure and be a component of competitive significance. Lenore is only one of hundreds of beer distributors who distribute beer throughout the Western United States. We cannot disagree with the trial court's findings that Lenore was a ". . . component of minimal competitive significance in that market . . ."

*Kirihara, supra,* at 91, and, as such, does not come under the protection of § 7.

The district court's order granting Olympia's motion for summary judgment is hereby AFFIRMED.

---

5. Though dealing with injunctive relief under Section 16 of the Clayton Act, where only threatened injury need be shown, and not with treble damages, *cf. Universal Brands, Inc. v. Philip Morris, Inc.,* 546 F.2d 30 (5th Cir. 1977), and *Richetti v. Meister Brau, Inc.,* 431 F.2d 1211 (9th Cir.), *cert. den.,* 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971). *See also* the discussion in *Knutson v. The Daily Review, Inc., et al.,* 548 F.2d 795 at pp. 803–804 (9th Cir. 1976).