**James BLAINE, et al.**

v.

**MEINEKE DISCOUNT MUFFLER SHOPS, INC., et al.**

**Civ. No. H–86–1528 (PCD).**

United States District Court,
D. Connecticut.

Aug. 4, 1987.

Richard Cohen, James Byrne, Byrne, Slater, Sandler, Shulman & Rouse, Hartford, Conn., for plaintiffs.

Thomas Shortell, Katherine Callahan, Updike, Kelly & Spellacy, Hartford, Conn., for Meineke Discount Muffler Shops, Inc.

Diane Sikorsky, Old Lyme, Conn., for defendants Ian Melmed, Sharon Melmed, Martin Glucklich, Silence is Golden, Inc., Sounds of Silence, Inc., Tuffmuff, Inc. & I.S.M.

## RULING ON MOTIONS TO DISMISS

DORSEY, District Judge.

### I. *Facts and Procedural History*

Meineke Discount Muffler Shops, Inc. ("Meineke") licenses the operation of Meineke discount muffler shops which sell, service and install automotive exhaust systems. Plaintiffs are licensed to operate a center at 1019 New Britain Avenue, West Hartford, Connecticut.[1] "Silence is Golden," "Sounds of Silence," "Tuffmuff," and "I.S.M." operate similar centers in greater Hartford. In its contract with plaintiffs, Meineke agreed "not to license, operate or maintain any other center within a three (3) mile area [of plaintiffs' franchise center]." License Agreement Subsection 3(b). Plaintiffs claim that Meineke breached this provision when it licensed Ian and Sharon Melmed, Martin Glucklich and Silence is Golden, Inc.[2] to operate a center at 91–93 Airport Road, Hartford, Connecticut—which plaintiffs claim is within three miles of their center. Plaintiffs further allege that Meineke has wrongfully refused to license plaintiffs to operate a Meineke center in Windsor Locks, Connecticut. They claim:

1. Meineke breached subsection 3(b) of their contract.

2. The Melmeds, Glucklich and Silence is Golden, Inc. tortiously interfered with plaintiffs' contract with Meineke by con-

tracting with Meineke for a license for the 91–93 Airport Road franchise knowing that such a license violated plaintiffs' contract with Meineke.

3. Meineke and the Connecticut defendants have combined or conspired to monopolize the Hartford area Meineke market in violation of the Sherman Act, 15 U.S.C. § 2, and, in furtherance of that conspiracy, have violated subsection 3(b) of plaintiffs' contract with Meineke and have ignored plaintiffs' application for a license in Windsor Locks.

4. That such combination or conspiracy violates the Connecticut Antitrust Act, Conn.Gen.Stat. § 35–27.

5. That such combination or conspiracy to deny plaintiffs an additional license in Windsor Locks violates the Sherman Act, 15 U.S.C. § 1.

6. That such combination or conspiracy to deny plaintiffs an additional license in Windsor Locks violated the Connecticut Antitrust Act, Conn.Gen.Stat. § 35–28.

7. The activities of all defendants constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–1100(a), *et seq.*

Defendants now move to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) claiming that plaintiffs' allegations of federal antitrust violations are insufficient and do not support the exercise of subject matter jurisdiction in this case and that, even if the exercise of jurisdiction is warranted, plaintiffs' conclusory allegations are insufficient to support plaintiffs' claims of federal antitrust violations. They further assert that, since plaintiffs' federal antitrust claims are inadequate, the court should also refuse to exercise pendent jurisdiction over the state claims.[3] Meineke also moves, in the alternative, that, should

1. Plaintiffs' franchise arrangement with Meineke is defined by a License Agreement dated April 6, 1981, and a License Transfer Approval dated April 24, 1981.

2. The Melmeds, Glucklich, and the corporate defendants other than Meineke are alleged to control four of the five Meineke franchises in

the Hartford area. They will be collectively referred to as the Connecticut defendants.

3. Defendants' arguments with respect to Fed.R. Civ.P. 12(b)(1) and 12(b)(6) shall be considered simultaneously.

the action not be dismissed, Count 1 be submitted to arbitration pursuant to its contract with plaintiffs.

## II. *Discussion of Law*

██ A motion to dismiss requires that the facts alleged be deemed admitted and construed liberally and that any inconsistencies or inferences be resolved in favor of plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A dismissal shall not be entered "unless it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975).

### A. *Sherman Act, Section 2*

██ It is unlawful for any person to "monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states, or with foreign nations." Sherman Act, Section 2, 15 U.S.C. § 2. There are three essential elements to a successful claim of Section 2 monopolization:

1. Possession of monopoly power in the relevant market.
2. Willful acquisition or maintenance of that power.
3. Causal "antitrust" injury.

*California Computer Prod. v. I.B.M.*, 613 F.2d 727, 735 (9th Cir.1979); *see United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). "Monopoly power" is the power to control prices or exclude competition. *United States v. E.I. Dupont de Nemours Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956); *see American Tobacco Co. v. United States*, 328 U.S. 781, 811, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946); *Standard Oil Co. v. United States*, 221 U.S. 1, 58, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1910). This *Dupont* definition has been applied principally to a defendant's share of the relevant product and geographic markets. *California Computer*

*Prod.*, 613 F.2d at 735; *see Grinnell Corp.*, 384 U.S. at 571, 86 S.Ct. at 1704; *Dupont*, 351 U.S. at 399, 76 S.Ct. at 1009; *American Tobacco Co.*, 328 U.S. at 797, 66 S.Ct. at 1133.

### 1. *Conspiracy*

Plaintiffs allege defendants have conspired to deprive them of access to a unique line of goods and services for the purposes of monopolizing that line in favor of the Connecticut defendants. The elements of a conspiracy to monopolize under Section 2 are: "1) proof of a concerted action deliberately entered into with the specific intent to achieve an unlawful monopoly, and 2) the commission of an overt act in furtherance of the conspiracy." *Paralegal Inst., Inc. v. American Bar Ass'n*, 475 F.Supp. 1123, 1132 (E.D.N.Y. 1979), *aff'd mem.*, 622 F.2d 575 (2d Cir. 1980); *accord United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Defendants argue that the allegations are insufficient to infer a combination or conspiracy among defendants to produce adverse, anticompetitive effects as to plaintiffs. *See American Tobacco Co.*, 328 U.S. at 810, 66 S.Ct. at 1139. All that is required of a plaintiff to survive a motion to dismiss a monopolization claim is "an allegation of some conduct permitting an inference of specific intent to monopolize." *Plumbers Local 598 v. Morris*, 511 F.Supp. 1298, 1308 (E.D. Wash.1981); *see Optivision, Inc. v. Syracuse Shopping Center Assoc.*, 472 F.Supp. 665, 680 (N.D.N.Y.1979). The same would be true of a claim of conspiracy to monopolize. *Strobl v. New York Merchantile Exchange*, 561 F.Supp. 379, 384 (S.D.N.Y. 1983). Similarly, plaintiffs must allege injury to the whole market and not solely their share. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Plaintiffs have not met this requirement. They make no allegations of concerted action deliberately entered into with the specific intent to achieve an unlawful monopoly. A franchiser's refusal to issue an additional license and establishing another franchise within the proscribed area are insufficient allega-

tions of a conspiracy. As discussed *infra*, even if one could infer an agreement amounting to a conspiracy, plaintiffs have not sufficiently alleged that this conspiracy was directed toward producing an anticompetitive effect.

## 2. *Relevant Product Market*

The relevant market embraces products that are reasonably interchangeable for the purpose for which they are produced—considering price, use and quality. *Dupont,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 264; *cf. Brown Shoe Co. v. United States,* 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). When a product is controlled by one person or entity, without available substitutes, there is monopoly power. *Dupont,* 351 U.S. at 394, 76 S.Ct. at 1006. There is no unlawful monopoly merely because one product differs from others, where there are other products that buyers may readily use for their purposes. *Id.*

In the instant case, plaintiffs allege that the relevant product market is the Hartford market for Meineke. Defendants argue that the relevant market should include those automotive businesses providing similar products, similar services and similar hours. In *Dupont,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 264, the Court refused to narrowly define the relevant product market to merely include cellophane, but instead held the market to include all flexible packaging material because the other materials, considering factors such as price, use and quality, were found to be reasonably interchangeable. Having so held, the Court found no intent to monopolize or unreasonably restrain trade. Similarly, other "discount muffler" shops provide services similar to those provided by all Meineke muffler shops, within and outside the Hartford area.

Plaintiffs allege, however, that, even if the broad market is a relevant product market, well defined submarkets may exist which, in themselves, constitute relevant product markets for antitrust purposes. *See Brown Shoe Co.,* 370 U.S. at 325, 82 S.Ct. at 1523. The Hartford area Meineke is claimed to constitute such a submarket.

The boundaries of a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors. *Id.* at 325, 82 S.Ct. at 1523. In support, plaintiffs cite *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338 (3d Cir. 1975), where an automobile franchisee alleged unfair trade practices by Chrysler Corporation with respect to its independent dealerships, one of which is Coleman. The line of commerce involved Dodge automobiles and trucks. Chrysler's right to structure its distribution system as it wishes was asserted and it was claimed that the law should not prevent it from achieving a totally vertically integrated distribution system, provided that a lawful end achieved by unlawful means is not protected by antitrust laws. *Id.* at 1347; *see Connell Co. v. Plumbers & Steamfitters,* 421 U.S. 616, 625, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418 (1975); *Siegel v. Chicken Delight, Inc.,* 448 F.2d 43, 51 (9th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972). The court concluded that the relevant market, depending on the evidence given, might be the wholesale market for Dodge automobiles in Allegheny County, Pennsylvania. This finding was based on the conclusion that Dodge dealers could not practically substitute other brand automobiles for those of the Chrysler Corporation. *Coleman,* 525 F.2d at 1349; *accord, e.g., Joe Westbrook, Inc. v. Chrysler Corp.,* 419 F.Supp. 824 (N.D. Ga.1976) (question whether Chrysler-Plymouth automobiles constituted a unique product market could not be decided because it presented a question of material fact). Plaintiffs argue that the relevant submarket here is the Hartford area Meineke muffler discount shops and that Meineke monopolized the market by restricting independent dealers and limiting the issuance of additional franchise licenses and the areas in which franchise applicants might operate. Plaintiffs' complaint, however, is deficient in that it does not provide

any basis for finding the existence of a submarket. Stated another way, plaintiffs have not alleged how the Meineke system is unique in the relevant market of enterprises which perform general muffler services as to come within the *Coleman* exception. Considering price, quality and interchangeability, Meineke mufflers and services could be reasonably interchanged with similar products of other manufacturers. It is unrealistic to assume that defendants could monopolize the whole automotive industry by the sole means of restricting the number and area of Meineke shops.

### 3. *Causal Antitrust Injury*

Causal antitrust injury is the third necessary element of a Section 2 unlawful monopolization claim. Section 4 of the Clayton Act authorizes suits for treble damages by "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Standing to sue exists only in those persons causally injured by antitrust violations. *Kapp v. National Football League*, 586 F.2d 644, 648–49 (9th Cir.1978); *John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495, 498–99 (9th Cir.1977). It is not enough that defendants violated the antitrust laws and that plaintiffs were injured. *Brunswick Corp.*, 429 U.S. at 486–89, 97 S.Ct. at 696–97; *see Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263, n. 14, 92 S.Ct. 885, 891, n. 14, 31 L.Ed.2d 184 (1972). An antitrust plaintiff must prove injury of the type the antitrust laws were intended to prevent and which flows from the unlawful nature of defendants' acts. *Brunswick Corp.*, 429 U.S. at 489, 97 S.Ct. at 697; *accord Cargill, Inc. v. Monfort of Colorado, Inc.*, — U.S. ——, ——, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986).

Such injury must have been caused by a reduction, rather than an increase, in competition as a result of defendants' acts since "[t]he antitrust laws, however, were enacted for the 'protection of *competition*, not *competitors*.'" *Brunswick Corp.*, 429 U.S. at 488, 97 S.Ct. at 697, quoting *Brown Shoe Co.*, 370 U.S. at 320, 82 S.Ct. at 1521; *see Oreck Corp. v. Whirlpool Corp.*, 579

F.2d 126, 133 (2d Cir.1978). Accordingly, plaintiffs must demonstrate that defendants' conduct was intended to or did have some anti-competitive effect beyond their own loss of business or the market's loss of a competitor. *California Computer Prod.*, 613 F.2d at 732; *see Knutson v. Daily Review, Inc.*, 548 F.2d 795, 803 (9th Cir.1976).

Plaintiffs do not allege injury to the competitive market as a whole, but simply allege injury to their ability to compete. Plaintiffs cannot recover merely because they suffered an economic loss resulting from a practice the legality of which depends upon its effect on a third party. *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 484, 102 S.Ct. 2540, 2551, 73 L.Ed.2d 149 (1982). Plaintiffs argue that there is no obligation to establish injury to competition where their alleged injury results from an unlawful conspiracy among their competitors. The Sherman Act and the Clayton Act are concerned with unlawful practices which injure competition. Section 4. of the Clayton Act, 15 U.S.C. § 15, requires proof of actual injury "by reason of anything forbidden in the antitrust laws." Unlawful conspiracy is forbidden by the antitrust laws. Plaintiffs must not only allege and demonstrate an injury to their business stemming from the alleged violation, but must also show that the injury effected the competition within the market in which they compete. Plaintiffs have alleged in Counts 3 and 5 that "as a direct result of the above described unlawful acts by the defendants, plaintiffs have suffered and will continue to suffer substantial damages." That is insufficient to allege injury to competition within the industry. Accordingly, the motion to dismiss those counts is granted.

### B. *Sherman Act, Section 1*

Section 1 of the Sherman Act provides that "[e]very contract, combination in form of a trust or otherwise, or conspiracy in restraint of trade or commerce among the several states ... is declared to be illegal." 15 U.S.C. § 1. *Standard Oil Co.*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619;

*Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 78 (2d Cir.1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). Although its literal terms apply to prohibit every restraint of trade, the Supreme Court has long interpreted the statute to prohibit only those restraints that unreasonably restrain competition. *Standard Oil Co.,* 221 U.S. at 58, 31 S.Ct. at 515; *National Soc'y of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978). The elements of a Section 1 violation are threefold: (1) joint or concerted action between more than one party that (2) unreasonably restrains trade in (3) interstate or foreign commerce. *R.D. Imports Ryno Indus. v. Mazda Distrib.,* 807 F.2d 1222, 1224 (5th Cir.1987). Unlike the required proof of a conspiracy to monopolize under Section 2, a specific intent to create a monopoly is not required under Section 1. "A judicial gloss on this statutory language has established the 'rule of reason' as the prevailing standard of analysis." *Standard Oil Co.,* 221 U.S. at 1, 31 S.Ct. at 502.

### 1. *Rule of Reason and the Per Se Rule*

 Under the rule of reason, the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. *Continental T.V., Inc.,* 433 U.S. at 49, 97 S.Ct. at 2557. The focus is on the challenged restraint's impact on competition, *i.e.* the consequences to competition of the conduct in the relevant market. *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir.1980). Only practices which impose unreasonable restraints upon commerce are condemned.

Justice Brandeis' renowned commentary formulates the Rule of Reason test of anticompetitive effects: "the true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question, the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before or after the restraint was imposed; the nature of the restraint and its effect, actual or probable." *Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918). Certain antitrust practices have been labeled as unreasonable *per se* and, therefore, unlawful, including "price fixing, group boycotts, resale price maintenance, territorial allocations and other practices involving competition preclusive conduct by monopoly groups." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 508 F.2d 547, 559 (1st Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).

Contrary to plaintiff's assertion, the absence of a sufficient allegation of anticompetitive effects in a Sherman Act complaint is fatal to the existence of a cause of action. *Havoco,* 626 F.2d at 554; *see Apex Hosiery Co. v. Leader,* 310 U.S. 469, 500–01, 60 S.Ct. 982, 996, 84 L.Ed. 1311 (1940); *George R. Whitten, Jr., Inc.,* 508 F.2d 547. The only exception to the requirement of an allegation of anticompetitive effects in a Section 1 complaint is in *per se* cases. This conclusion does not follow from the fact that anticompetitive effects need not exist to establish the elements of a per se offense, but rather from the fact that the type of conduct is so destructive of free competition that deleterious effects will be conclusively presumed. *Havoco,* 626 F.2d at 555; *see Socony Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (price fixing agreements determined illegal *per se* ); *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) (group boycotts are offensive *per se* ); *United States v. Topco Associates, Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972) (market allocations deemed illegal *per se* ); *International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947) (certain types of tying arrangements determined illegal *per se* ). Plaintiffs allege a group boycott, thereby invoking a *per se* illegality standard. *See Klor's, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741. At best, plain-

tiffs' claims constitute unfair trade practices and other business torts. Some earlier cases have applied the *per se* rule to the analysis of conspiracies to eliminate a competitor by unfair means. *See, e.g., Albert Pick-Barth Co. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir.), *cert. denied,* 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932); *Atlantic Heel Co. v. Allied Heel Co.,* 284 F.2d 879 (1st Cir.1960); *Perryton Wholesale, Inc. v. Pioneer Distrib. Co.,* 353 F.2d 618 (10th Cir.1965), *cert. denied,* 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966); *C. Albert Sauter Co. v. Richard S. Sauter Co.,* 368 F.Supp. 501 (E.D. Pa. 1973). The reasoning in these cases is not persuasive and, therefore, will not be adopted. *See Havoco,* 626 F.2d at 555–56. Furthermore, the *Pick-Barth* line of cases has been greatly limited, if not overruled, by the First Circuit, which expressly refused to apply the *per se* analysis to acts of unfair competition. Unfair competition was held to be actionable under the Sherman Act only where a defendant with significant market power utilized unfair competition to eliminate or cripple competitors as an entirety, thereby increasing its own market dominance and affecting competition as required by the Rule of Reason. *George R. Whitten, Jr., Inc.,* 508 F.2d 547.

Moreover, plaintiffs' allegations of a group boycott merely constitutes a refusal to deal. A manufacturer has the right to select its customers and to refuse to sell its goods to anyone, for reasons sufficient to itself. *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919). Unlike the situation in *Klor's,* where the suppliers completely cut off the dealer's suppliers pursuant to instructions received from the larger competitor (Broadway-Hale), plaintiffs here have not been completely cut off from the discount muffler business. Plaintiffs still maintain the operation of the West Hartford franchise. Merely refusing to offer an additional franchise to plaintiffs is not offensive *per se.* Similarly, the district court in *Dunn & Mavis, Inc. v. Nu-Car Driveway, Inc.,* 691 F.2d 241 (6th Cir., 1982), pointed out that no valid collective refusal to deal or group boycott is alleged where there is no evidence that the group of competitors on the same level coerced, suggested or agreed [to act together]. *Id.* at 243.

The next question is, therefore, whether plaintiffs allege a claim under the Rule of Reason. The Rule of Reason requires not only that plaintiffs allege and prove anticompetitive effects, but additionally that the injury complained of be the type that the antitrust laws were designed to protect. *Havoco,* 626 F.2d at 556. Under the Rule of Reason test, it is the unfair means which may have been employed by defendants that fall within the purview of the Sherman Act. The question is whether those means lessened competition. Mere allegations of loss of individual competitive ability are not sufficient. There must be some allegation of public injury to competition; a harmful effect on a more generalized market and not merely on a single supplier or purchaser. *George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir.1979); *see Havoco,* 626 F.2d 549.

Accordingly, plaintiffs have failed to allege sufficient injury to the market. "[W]hen stripped to its essential allegations, the complaint does no more than state plaintiffs' commercial disappointment at losing [Meineke] patronage—the recurrent case of the jilted customer, dealer or supplier who loses a manufacturer's franchise and accuses the manufacturer and the new suitor of attempting to monopolize something." *Dunn & Mavis, Inc.,* 691 F.2d at 243; *see Burdett v. Altec Corp.,* 515 F.2d 1245, 1249 (5th Cir.1975).

The motions to dismiss Counts 3 and 5 are granted. As this court is, therefore, left without jurisdiction over the action, the state claims are likewise dismissed under Fed.R.Civ.P. 12(b)(1). Similarly, the court will not reach the issue regarding the arbitration clause.

SO ORDERED.