BACKGROUND AND TDK COMPLAINT

EAGAN, Judge.
The Complaint contains the following allegations. The plaintiff, Data Carpet & Rug Corp., is in the business of installing commercial carpet. The plaintiff, Michael Bartha, is an enrolled member of the Mohegan Tribe, as well as a key person in charge of the Connecticut operations of the corporate plaintiff.
*618 The defendant MTGA requested bids for the installation of carpeting at the Mohegan Sun Casino, subject to. certain bid requirements and subject to a deadline for the submission of all bids. The plaintiff, Data Carpet and Rug Corp., submitted its bid for the work within the time required, allegedly meeting all requirements set forth in the bid request, and was allegedly the lowest qualified bidder.
The defendant Michael Bozsum, d/b/a M & M Tile and Carpet, is the brother of the defendant, Bruce “Two Dogs” Bozsum, who is Chairman of the Mohegan Tribe, the MTGA, and serves on the Mohegan Tribal Council. Michael Bozsum allegedly did not file a timely bid. It is also alleged that the MTGA, the Chairman, and Pi-neault, an MTGA employee who is the Senior Vice President of the Casino, provided Michael Bozsum with confidential information with regard to bidding on the project after all other bids were received.
Michael Bozsum was then allowed to submit a bid for the work, after the mandatory deadline for bids had passed, which plaintiffs allege was substantially greater than plaintiff, Data Carpet & Rug’s bid. The contract for the installation of carpet at the Casino was awarded to the defendant Michael Bozsum, d/b/a M & M Tile and Carpet, although he is allegedly not capable of performing the work in accordance with the bid requirements.

DISCUSSION

12. Standard of Review
The standard of review on a motion to strike and a motion to dismiss is basically the same. “In ruling on whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader ..,. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction ...” David Bartha, First American Mechanical, Inc, v. MTGA, GDCA-T-04-502 (August 9, 2005).
A motion to strike challenges “the legal sufficiency of the allegations of any complaint ...” Worthen v. MTGA, et al, Docket No. GDTC-T-99-100 (Feb 14, 2002) (internal citations omitted). In ruling on a motion to strike, the court “must construe the facts in the complaint most favorably to the Plaintiff.” Id.
B. Negligence Against the MTGA— Count One
In Count One, plaintiffs claim a business tort by the MTGA, based on Data Carpet 's failure to be awarded the carpet installation contract in violation of MTGA’s bidding procedures. The defendants argue that Count One must be dismissed because there exists no waiver of sovereign immunity sufficiently explicit to give the Gaming-Disputes Court jurisdiction over the claim. “This Court has long held that the Mohegan Tribe, and its sub-entities, are entitled to the well-established immunity from suit traditionally enjoyed by sovereign powers. The issue of sovereign immunity is jurisdictional in nature. Any waiver of this immunity by the Tribe must be unequivocally expressed and cannot be implied.” Creasey v. MTGA, GDAC-T-03-119, (September 17, 2003) (internal quotations and citations omitted).
The plaintiffs assert, however, that the Tribe has waived its sovereign immunity pursuant to the Mohegan Torts Code, § 3 250(b) (Mohegan Tribal Ordinance No.2005-02, § 10), which provides that:
“(b) By adoption of this Code, the Mohegan Tribal Gaming Authority waives its sovereign immunity and consents: to be sued by persons with tort, claims arising under this Code, but only in the *619 Mohegan Gaming Disputes Court, (emphasis added)”
The problem confronting the plaintiffs is that this waiver of sovereign immunity requires the pleading of a tort, as defined in S G—245 of the Torts Code (Mohegan Tribal Ordinance No.2005-02, § 5):
“tort means an injury to a person caused by a breach of a legal duty to that person, but does not include a breach of a duty imposed by contract.”
Thus, under § 3-245, regardless of whether the asserted claim is one of traditional negligence or, as plaintiffs assert, negligence in the business framework, a plaintiff must show the existence of a duty owed it which has been breached.
It is clear that plaintiffs’ asserted business tort derives from their disappointment in the MTGA awarding the carpet contract on which Data Carpet bid to another bidder. In Connecticut, such a disappointed bidder’s claim has long been viewed as sounding in contract, not in tort. “As a matter of common law, an unsuccessful bidder on a state or municipal contract has no contractual right that would afford standing to challenge the award of a Contract. ‘[A] bid, even the lowest responsible one, submitted in response to an invitation for bids, is only an offer which, until accepted by the municipality, does not give rise to a contract between the parties. John J. Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695, 702, 448 A.2d 180 (1982)...Connecticut Associated Builders & Contractors v. City of Hartford, 251 Conn. 169, 178, 740 A.2d 813 (1999).
 More importantly, it is a generally recognized principle of law that .... the disappointed bidder has no right to judicial intervention.” See Perkins v. Lukens Steel Co., 310 U.S. 113, 129, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). This almost universal recognition that a disappointed bidder has no standing to sue derives from the fact that: “In particular, state and local competitive bidding laws have not been enacted to protect bidders.” Connecticut Associated Builders & Contractors, supra, at 179, 740 A.2d 813 In Connecticut, “[N]o statute grants unsuccessful bidders standing to challenge the award of a state contract” Id.
Similarly, there is no Mohegan law or ordinance that grants an unsuccessful bidder the standing to challenge the MTGA’s award of a contract, Moreover, since bidding regulations do not create any duty to disappointed bidders, they have no right to judicial relief in the Mohegan Gaming Disputes Court, under the Mohegan Torts Code.
The issue, however, is whether disappointed bidders can allege any additional facts which would allow them to pursue a claim against the MTGA. In Connecticut, where it is recognized that bidding regulations have been enacted “to guard against abuses in the award of contracts such as favoritism, fraud or corruption” Id. and “in no sense create any rights to those who submit bids,” John J. Brennan Construction, supra, at 702, 448 A.2d 180, such an exception has been judicially recognized. Under this very limited exception, unsuccessful bidders “have standing to challenge the award of a public contract to another ‘where fraud, corruption or acts undermining the objective and integrity of the bidding process existed ... ’ ” Ardmare Construction Co. v. Freedman, 191 Conn., 497, 504-505, 467 A.2d 674 (1983). As the Connecticut Supreme Court noted in Connecticut Associated Builders & Contractors, supra, at 179-180, 740 A.2d 813 “Like a comparable action based on federal law, such a suit is‘brought by one who suffers injury as a result of the alleged illegal activity, but the suit itself is brought in the *620 public interest by one acting essentially as a private attorney general.’ ”, quoting from Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C.Cir.1970).
The gravamen of plaintiffs’ negligence count against the MTGA is, in large part, based on conclusory allegations that the contract award was based on improper influence which was unethical, illegal and potentially compromised the integrity of the Tribe’s gaming operations. (Count One, paragraphs 14 and 15). On the other hand, the Complaint does allege with specificity that the MTGA knew or should have known that the successful bidder had been provided “with confidential information with regard to the bids on said project ...” Count One, paragraph 18(c) [1].
Construing this allegation most favorably to plaintiffs, as this court must do on a motion to strike or to dismiss, plaintiffs have sufficiently pleaded undue influence and favoritism of the type that undermines the objective and integrity of the bidding process.
Nevertheless, while such a claim has been found by Connecticut courts to confer standing on disappointed bidders, allowing them to act as “a private attorney general,” Connecticut Associated Builders, supra, at 179-180, 740 A.2d 813, this court cannot follow those Connecticut decisions. Once it is established that there is no legal duty owed to a disappointed bidder, as set forth above, it necessarily follows that there has been no waiver of sovereign immunity in the Mohegan Torts Code authorizing the Gaming Disputes Court to hear such claims.
In reaching this conclusion, the court recognizes that the Mohegan Code. Article II, § 3-52(3) (Ord. No. 95-4 § 301) establishing the Gaming Disputes Court, adopts as the substantive law of the Tribe “the common law of the State of Connecticut.” However, this provision expressly exempts the adoption of any Connecticut common law which conflicts with Mohegan Tribal Law. Clearly, the Tribe’s sovereign immunity and its failure to expressly waive it “trumps” any adherence otherwise man dated to Connecticut common law.
Because there has been no express waiv er of sovereign immunity as to Count One, the Defendants Motion to Dismiss Count One is granted for lack of subject matter jurisdiction.
C. Negligence Against the Mohegan Tribal Nation and The Chairman— Count Two
In Count Two, the plaintiffs allege that the Mohegan Tribal Nation and the Chairman were negligent in influencing the MTGA to award the carpet contract to defendant Michael Bozsum.
The defendants argue that to the extent the plaintiffs’ claims arise under the Torts Code, proper venue against the Tribe and its Chairman lies in the Mohegan Tribal Court and not in the Gaming Disputes Court. Mohegan Torts Code, § 3-249(b). Plaintiffs counter that because the dispute which is the subject of Count Two involves a “gaming” matter concerning the renova tion of the Casino, the Mohegan Constitu tion provides the Gaming Disputes Court with jurisdiction.
*621 The gravamen of plaintiffs’ claim against the Tribe and the Chairman is the same as against the MTGA in Count One. They are the claims of a disappointed bidder. As such, this court need not resolve the parties’ dispute over whether the Gaming Disputes Court or the Tribal Court is the appropriate one for purposes of venue. As set forth above, the Mohegan Torts Code contains no waiver of sovereign immunity over claims of negligence by disappointed bidders. Accordingly, Count Two is dismissed for lack of subject matter jurisdic-^on-
íí I). Breach of Connecticut Antitrust Act—Count Three
In Count Three, the plaintiffs allege that the defendants Pineault and the . Chairman, acting outside the scope of f®'; their authority, and in conjunction with «Hjlythe defendant Michael Bozsum, engaged in ■ Corrupt, unfair and anti-competitive con- ,‡ spiraey to award all carpeting contracts to h Michael Bozsum, in violation of The Con->4 necticut Antitrust Act, C.G.S. §§ 35-26 and 35-28.
C.G.S. § 35-26 provides that “Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful.” C.G.S. § 35-28 provides:
Without limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce; (b) fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale, or supply of any part of trade or commerce; (c) allocating or dividing customers or markets, either functional or geographical, in any part of trade or commerce; or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person.
Assuming arguendo that Connecticut Antitrust Act can be found to be a part of Mohegan Law and applicable to contracts involving the Casino, defendants submit that plaintiffs have nonetheless failed to state a claim for relief; they do not allege a detrimental effect on competition in the relevant market, which is required when no per se violation under C.G.S. § 35-28 is alleged. Plaintiffs respond that their Complaint sets forth facts sufficient for the court to infer the effect of the alleged conspiracy was detrimental to competition within the Mohegan community.
Even in light of the liberality of pleadings, Count Three cannot be construed to allege injury to competition, contrary to plaintiffs’ contention. In discussing injury to competition under the Sherman Federal Act, upon which the Connecticut Act is largely modeled[2], the District Court for the District of Connecticut in Blaine v. Meineke Discount Muffler Shops, Inc., 670 F.Supp. 1107, 1114 (D.Conn.1989) found:
“The question is whether those means lessened competition. Mere allegations of loss of individual competitive ability are not sufficient. There must be some allegations of public injury to competition; a harmful effect on a more generalized market and not merely on a single supplier or purchaser.”
The only injury of which plaintiffs complain is that, as a result of the alleged conspiracy in restraint of trade, plaintiffs sustained “substantial damages and losses, including loss of income and profits (Count *622 Three, paragraph 24).” Because of this failure to allege injury to competition, Count Three must be stricken.
The defendants further argue that to the extent the claims in Count Three are asserted against Pineault and the Chairman in their capacity as representatives of the MTGA, they must fail. The Tribe has not waived sovereign immunity for antitrust claims for the same reasons the court found there was no waiver of sovereign immunity with regard to claims under the Connecticut Unfair' Trade Practices Act. David Bartha, supra, at pp. 5-6:
[T]here has been no ‘unequivocal’ waiver of sovereign immunity in connection with CUTPA claims brought against the Tribe. The limited waiver of sovereign immunity contained in the Mohegan Torts Ordinance, MTO 2001-07, does not incorporate claims pursuant to Conn. Gen.Stat. 42-110a et seq, and further specifically excludes any breach of duty imposed by contract. In the past, this Court has refused to find an implied waiver of sovereign immunity based on Connecticut law, holding that the sovereign immunity of the Mohegan Tribe is preserved rather than abrogated by the provisions of MTO 95-4.
The plaintiffs do not dispute this point. Instead they note that the claims in Count Three are based on actions outside the scope of defendant Pineault and the Chairman’s authority as representatives of the MTGA. As such, they do not implicate the Tribe’s sovereign immunity.
The defendants respond that for claims against a tribal representative to be outside the cloak of sovereign immunity, the allegations must be such as to show the official acted “without any colorable claim of authority.” At oral argument, defendants elaborated on the meaning of “without colorable authority”: “The fact is that the Chairman and Ray Pineault cannot accomplish what plaintiff claims that they did ... if they are acting in their individual capacities. They have to be engaged in some kind of official capacity in order to do what they are alleged to have done.” (Transcript, p 31-32.) By this, the defendants appear to be arguing that the challenged activities must be so unrelated to an official’s duties as to require the conclusion they were “not on the job” at the time of the activity.
The Connecticut Supreme Court, in Shay v. Rossi, 253 Conn. 134, 170-171, 749 A.2d 1147 (2000), rejected just such a test in determining whether certain state officials were acting outside the scope of their authority.
We have never defined the precise contours of the “in excess of statutory authority” doctrine; ... which remove-the shield of sovereign immunity from state officials.... The defendants suggested at oral argument before this court that it should be viewed similarly to the doctrine of judicial immunity, which has been held not to apply only where the judicial conduct is so far outside the normal scope of judicial ium--tions that the judge was in effect noi acting as a judge.
Otherwise, the defendants contend, the exception to sovereign immunity would threaten to swallow the rule, because ‘then sovereign immunity could be circumvented in every circumstance, in which a state employee is alleged to have committed a wrongful act’.
We reject the defendants’ position.
Having rejected an approach to determine whether an official has exceeded his statutory authority similar to that es- *623 poiised by the present defendants, the Connecticut Supreme Court still declined “at least in this case and at this stage of our jurisprudence.” (Id. at 173), to define the precise test for when an official has exceeded his authority. Instead, it con-eluded that “the facts of this case bring it sufficiently outside the normal scope of the defendants’ statutory authority to invoke ffie doctrine.” Id.
This court, like the Connecticut Su-ijj'/preme Court, is unwilling to adopt a test ⅞: for whether an MTGA official has exceed-Jj; ,ed the scope of his authority which is so ;broad that virtually any act done while the ¡A - official is “on the job” is within the scope j§:,pf his authority.
Similarly, like the Connecticut Supreme d Court in Shay, this court at this stage of ■A-,the Mohegan jurisprudence is unwilling to Jp articulate with specificity the contours of it the test for determining when an official ;A has acted outside the scope of his authori-rj ty. Nevertheless, it is clear here that the 4 allegations of untoward conduct are not so ⅝ sufficiently removed from the normal ⅞ scope of the defendants’ official duties to II find they exceeded their authority. Other ■M than conclusory statements, the only alle-⅞ gations that the Chairman and Pineault ■¿.¡exceeded them authority are that they pro-■Jttvided the defendant Michael Bozsum with ⅜| confidential information and did not re-IIS quire him to submit a timely bid. [Count hi Three, paragraph 20]
The plaintiffs, however, ask the court to v consider affidavits and an email attached ■ri to their Memorandum in Opposition to the : «¡¿Motion to Strike setting forth other de-«3 tailed allegations of acts by the defendants ⅜ that are far more serious in nature and ¾ removed from what can be viewed as their ⅜ normal duties. In asking the court to . ⅞', consider these materials, the plaintiffs ig- > j1 nore the long standing rule that in decid--g ing a Motion to Strike or to Dismiss, a trial court cannot resort to information not contained in the complaint. Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988); Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990); Fraser v. Henninger, 173 Conn. 52, 60, 376 A.2d 406 (1977). Consequently, the information in these affidavits and email cannot be considered.
Absent more than the sparse allegations in the Complaint, the court cannot find that the defendants exceeded their authority and, therefore, the lack of a w'aiver of sovereign immunity requires the dismissal of Count Three.
E. Breach of Connecticut’s Unfair Trade Practices Act—Count Pour
In Count Four, the plaintiffs allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110a et seq. Count Four is brought against the same individual defendants as in Count Three. It incorporates, by reference, the factual allegations contained in Count Three and again alleges that defendants Bozsum and Pineault exceeded their authority in their corrupt behavior, in violation of CUTPA.
Defendants maintain that even assuming CUTPA applies to the challenged conduct, Count Four is fatally deficient in that it fails to allege the individual defendants engaged in trade or commerce as required by CUTPA.
CUTPA, C.G.S. § 42-110(b)(a) provides that: “No person shall engage in unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce.” According to defendants, there is no reasonable way the Complaint can be construed to allege Pineault and The Chairman, as individuals, were engaged in trade or commerce. Plaintiffs respond that because defendants’ allegedly *624 corrupt behavior involved the MTGA, which is involved in commerce, the court can easily construe the Complaint as containing an allegation that the individual defendants were engaged in trade or commerce.
The issue is a novel one. Its resolution depends upon whether individuals allegedly acting outside the scope of their authority with regard to the challenged conduct can be found to be engaged in commerce because of the relationship of their conduct to an institution which is so engaged.
Neither party has provided any authority supporting its argument. This issue need not be resolved in the instant case because Count Four must be dismissed for another reason.
Count Four suffers from the same deficiency as Count Three in that it fails to allege conduct by the defendants which is sufficiently removed from their official duties to find they exceeded their authority.
Once it is found that alleged activities are within the scope of defendants’ employment, the doctrine of sovereign immunity is determinative. David Bartha, supra, pp. 5-6, already held that the Tribe has not waived its sovereign immunity for CUT PA claims. Thus, Count Four also must be dismissed for lack of subject matter jurisdiction.
Accordingly, the defendants’ Motion to Strike/Dismiss the Complaint is granted.

. The plaintiffs also submitted affidavits and an email as attachments to their Memorandum in Opposition to Motion to Dismiss or Strike to buttress the Complaint's allegations of improper influence. The court ordered, at oral argument, that this affidavit and materials be sealed, on a Motion by defendants, to which the plaintiffs did not object. Defendants asserted that the affidavits and related material are confidential and were provided to plaintiffs as part of an Ethics Commission proceeding, which is confidential.

. See, Shea v. First Federal Savings and Loan of of New Haven, 184 Conn., 285, 303-304, 439 A.2d 997(1981)