RADIO TODAY, INC. and Dan
Formento, Plaintiffs,

v.

WESTWOOD ONE, INC., d/b/a NBC
Radio Entertainment and Westwood
One Radio Networks, Defendants.

No. 87 Civ. 8299 (MBM).

United States District Court,
S.D. New York.

April 19, 1988.

Joseph F. Donley, Shereff, Friedman, Hoffman & Goodman, New York City, for plaintiffs.

Christopher O'Neill, Rogers & Wells, New York City, for defendants.

OPINION AND ORDER

MUKASEY, District Judge.

Defendant Westwood One, Inc. moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss

the Amended Complaint of plaintiffs Radio Today, Inc. and Dan Formento for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is granted in part and denied in part.

## I.

The facts as set forth in the Amended Complaint, which must be taken as true for the purposes of this motion, *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), are as follows: Plaintiff Radio Today, Inc. develops, produces and sells programs nationwide to radio networks and stations. (Amd. Compt. ¶ 4) Plaintiff Dan Formento is president of Radio Today and is responsible for developing radio programs. (Amd. Compt. ¶ 5) Defendant Westwood One purchases and develops radio programs and also sells such programs nationwide to radio stations. In mid–1987, Westwood One acquired NBC Radio. (Amd. Compt. ¶ 6)

In or about June 1986, NBC Radio suggested to Formento that he redesign a rock-and-roll radio program that Formento had previously produced for NBC Radio in 1984. Formento understood that if NBC approved the redesigned program, he would license the program to NBC. Formento and Radio Today proceeded to design a program called "Flashback" which combined popular music from the years 1965 through 1975 and material to evoke nostalgia, including excerpts from news stories, commercial jingles and film soundtracks, connected with narration throughout the program. Plaintiffs refer to this as the "Flashback Format." The first hour of the program was devoted to a single theme; the second hour involved four separate themes including a "birthday salute" to rock-and-roll musicians and a review of events from the corresponding week in rock-and-roll history. (Amd. Compt. ¶ 9)

On October 4, 1986, Radio Today entered into a written agreement with NBC Radio under which Radio Today agreed to produce and deliver to NBC Radio 52 "separate and unique" installments of "Flashback." The term of the agreement ran from January 1, 1987 through December 31, 1987. (Amd. Compt. ¶ 11)

The agreement[1] granted NBC Radio "the exclusive worldwide rights to broadcast each of the programs [in the "Flashback" series] once during the term over each station licensed by NBC [Radio]." The agreement also granted to NBC all rights to "Flashback" that were "reasonably" required for the purpose of exercising the broadcast rights. All rights not granted to NBC Radio under the agreement remained "the sole and exclusive property" of Radio Today. (Amd. Compt. ¶ 12)

The agreement also provided that after the term of the agreement, "all right, title and interest in and to the Programs shall revert back to [Radio Today]." The agreement further provided that Radio Today was free to accept offers from third parties to buy future "Flashback" programs, provided that NBC was given a right to match any such offer. (Amd. Compt. ¶ 14)

In accordance with the agreement, plaintiffs produced "Flashback" programs and delivered them to NBC Radio in timely fashion. These were distributed to radio stations on LP discs labelled to credit Radio Today and Formento as producers of the series. The "Flashback" programs were broadcast weekly by approximately 150 radio stations nation-wide, reaching an estimated 15 million listeners. (Amd. Compt. ¶ 16)

In August 1987, NBC sold its radio networks, including NBC Radio, to Westwood One. Thereafter, Radio Today began dealing with Westwood One rather than NBC

---

1. Although the agreement was not attached as an exhibit to the Amended Complaint, the parties agreed at oral argument that it should be so attached, and the Amended Complaint is deemed further amended by attachment of the agreement. Accordingly, to the extent there may be any contradiction between the text of the Amended Complaint and the agreement, the agreement controls. *Nishimatsu Construction Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975); 2A Moore's Federal Practice ¶ 10.06 (2d. ed. 1987).

Radio in connection with "Flashback" installments. (Amd. Compt. ¶¶ 17–18)

In October 1987, a company called LBS Communications offered to buy from Radio Today a license for the 1988 "Flashback" programs at twice the price paid under the agreement with NBC. (Amd. Compt. ¶ 19) In accordance with the agreement, Radio Today offered Westwood One the opportunity to match LBS's offer, but Westwood One declined to do so. Radio Today continued to produce weekly installments of "Flashback" for Westwood One throughout the end of 1987. (Amd. Compt. ¶ 20)

After deciding not to continue to purchase "Flashback" programs from Radio Today for 1988, Westwood One undertook to produce a replacement program in substantially the same format as "Flashback." Westwood One called its replacement program "Backtrack." (Amd. Compt. ¶ 21) Although under its agreement with Radio Today, Westwood One was obligated to continue to pay for "Flashback" installments through the end of 1987, Westwood One decided not to release any of the remaining "Flashback" installments but instead to furnish radio stations immediately with "Backtrack" programs. (Amd. Compt. ¶ 22)

On November 3, 1987, Westwood One sent a Mailgram to the programming directors of radio stations across the country, announcing that Westwood One was introducing a "nostalgic album rock program replacing 'Flashback.'" The Mailgram further stated that Andy Denemark (of Westwood One) was the "original creative force behind 'Flashback'", and was "responsible for 'Backtrack's' sound, vitality and success." (Amd. Compt. ¶ 23)

Plaintiffs contend that Westwood One's Mailgram was part of a campaign to ex-

ploit the "Flashback Format" and pass off "Backtrack" as the product of Radio Today and Formento. Plaintiffs claim further that defendant undertook this campaign for the purpose of preventing Radio Today and LBS from successfully distributing "Flashback" in 1988 by misleading radio stations into accepting "Backtrack" as a continuation of "Flashback." (Amd. Compt. ¶ 21) Plaintiffs claim that as part of this campaign, Westwood One (1) falsely represented to radio stations that they were required to accept "Backtrack" in place of "Flashback" under contracts between the stations and Westwood One; (2) falsely represented to radio stations and advertisers that "Backtrack" and "Flashback" were produced by the same persons; and (3) falsely represented to radio stations and advertisers that "Backtrack" was to be of comparable or superior quality to "Flashback." (Amd. Compt. ¶ 24)

The first installment of "Backtrack" was distributed the week of November 16, 1987 and substantially resembled, both in format and content, the previous "Flashback" programs, especially the 47th installment of "Flashback" ("Flashback 47") that had previously been delivered to Westwood One.[2] (Amd. Compt. ¶ 25)

Plaintiffs further claim that as part of the alleged campaign to pass off "Backtrack" as the creation of the plaintiffs, Westwood One deliberately mislabelled the six LP discs comprising the first "Backtrack" installment to state that "Backtrack" is "PRODUCED FOR NBC RADIO ENTERTAINMENT By DAN FORMENTO AND RADIO TODAY." The label on the sixth side of the LP package also refers to the "Flashback Six Pack," a phrase used in the "Flashback" programs to indicate six

---

**2.** Among other significant similarities alleged, the first installment of "Backtrack" and "Flashback 47" are both based on the year 1966, which year had been announced in a promotion at the end of the 46th "Flashback" installment. In addition, the format of the first "Backtrack" installment tracks the "Flashback Format" in that the first hour involves a single theme, while the second hour involves four themes, including the "birthday salute" and a review of events from the corresponding week in rock-and-roll

history. The "birthday salute" in the first "Backtrack" installment uses the same theme used in "Flashback 47," including a dedication to the musicians Joe Walsh and Duane Allman, accompanied by the edited version of a Beatles song used in all "Flashback" "birthday salutes." In addition to the foregoing similarities, the first "Backtrack" installment also borrowed themes from previously aired "Flashback" programs. (Amd. Compt. ¶ 25)

free-standing segments at the end of each program. (Amd. Compt. ¶¶ 26, 27)

## II.

The Amended Complaint sets forth five claims for relief based on the foregoing facts. Those claims are as follows: (1) breach of contract, either express, implied or quasi-contract (Count I); (2) passing off under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (3) false advertising under Section 43(a) of the Lanham Act (Count III); (4) violation of Sections 50 and 51 of the New York Civil Rights Law (Count IV); and (5) unfair competition under New York common law. (Count V).

A Rule 12(b)(6) motion can be granted only if it is clear that plaintiffs would not be entitled to relief under any set of facts that might be proved in support of the allegations in the complaint. *Hishon v. King & Spaulding, supra,* 467 U.S. at 73, 104 S.Ct. at 2232; *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984). In evaluating the sufficiency of the pleadings, all material allegations of the complaint must be deemed true. *Hishon, supra,* 467 U.S. at 73, 104 S.Ct. at 2232.

*The Contract Claims (Count I)*

■ Plaintiffs suggest three alternative contract theories arising from the core claim that defendant breached an agreement to pay them not only for particular "Flashback" programs, but also for the "Flashback" format: express contract, implied-in-fact contract and quasi-contract. Here, the contract which the parties agreed would be deemed attached to the Amended Complaint defeats all three of these contract theories. (As noted above, to the extent the allegations in the Amended Complaint contradict the agreement itself, the latter governs. *Nishimatsu Construction Co. v. Houston National Bank, supra* n. 1.)

First, the contract does not purport to protect the "Flashback" format, but only the programs themselves. Under the contract, plaintiffs were to be paid for a series of 52 particular programs, not for their format. The language in Paragraph 1 of the agreement relating to the format merely describes the nature of the programs to be produced under the agreement; it does not purport to create separate rights with respect to the format of the programs. Nor does Paragraph 5, relating to the termination of the agreement, suggest that the parties contracted for the "Flashback" format in addition to the programs themselves. Paragraph 5 states that after termination of the agreement, "all right, title and interest in and to *The Programs* shall revert back to [plaintiffs]" (emphasis added), reflecting the parties' intent to license defendant's use of the programs but not the "Flashback" format. Accordingly, I reject plaintiffs' express contract theory.

■ Nor can the facts alleged here be said to give rise to an implied-in-fact contract. Such contracts arise in the absence of an express agreement and are based on the conduct of the parties, from which a fact finder may fairly infer the existence and terms of a contract. *Robbins v. Frank Cooper Associates,* 241 N.Y.S.2d 259, 261, 19 A.D.2d 242, 244 (1st Dep't 1963), *rev'd on other grounds,* 14 N.Y.2d 913, 200 N.E. 2d 860, 252 N.Y.S.2d 318 (1964). But the prerequisite for such a contract is that there be no express agreement dealing with the same subject matter. Where, as here, there is an express agreement covering the subject matter of the alleged implied-in-fact agreement, the implied-in-fact agreement is precluded as a matter of law. *Miller v. Schloss,* 218 N.Y. 400, 406–09, 113 N.E. 337 (1916); *Hohenberg Co. v. Iwai New York, Inc.,* 6 A.D.2d 575, 180 N.Y.S.2d 410 (1st Dep't 1958). The logic at work here is obvious: If the parties have an express contract that deals with a subject, it makes little sense to conclude that they in fact agreed to additional terms but simply decided to leave them out of the express contract. Indeed, the merger clause in the agreement in this case bears out that logic. It recites: "This constitutes the entire Agreement of the parties, all prior understandings being merged herein." If the "entire Agreement" does not protect the "Flashback" format, there can be no

claim that a parallel unwritten agreement does.

Finally, the plaintiffs' quasi-contract claim requires proof that a novel and concrete idea was appropriated, that the defendant was enriched as a result, and that the appropriation and enrichment occurred under the circumstances that make it unjust to deny recovery. *Werlin v. Reader's Digest Association, Inc.*, 528 F.Supp. 451, 465–66 (S.D.N.Y.1981). Although the parties have directed most of their attention to a dispute about the novelty *vel non* of "Flashback" as a nostalgia-*cum*-rock-and-roll program, that is a cultural thicket that Rule 12(b) mercifully compels me to avoid. The quasi-contract claim, like the implied-in-fact contract claim, is barred by the existence of the parties' express agreement dealing with the same subject matter. *Chadirjian v. Kanian*, 123 A.D.2d 596, 598, 506 N.Y.S.2d 880, 882 (2d Dep't 1986); *Nixon Gear and Machine Co. v. Nixon Gear, Inc.*, 86 A.D.2d 746, 447 N.Y.S.2d 779, 781 (4th Dep't 1982).

For the above reasons, the contract claims must be dismissed.

*The Passing Off and Unfair Competition Claims (Counts II and V)*

Here the plaintiffs are on firmer ground. The essence of both a passing off claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and an unfair competition claim under the common law of New York is the same: Plaintiffs must allege facts that show a likelihood of confusion or deception of purchasers as to the source of the product at issue. *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed. 2d 787 (1980); *Silverman v. CBS Inc.*, 632 F.Supp. 1344, 1357 (S.D.N.Y.1986). The Amended Complaint abounds in such allegations, including the charge that defendant deliberately misrepresented "Backtrack" as the creation of plaintiffs and a continuation of the "Flashback" series. (Amd. Compt. ¶¶ 21–28, 42, 62, 64) Plaintiffs set forth several specific misrepresentations concerning the source of "Backtrack," including those contained in the November 3, 1987 Mailgram announcing "Backtrack" and the mislabelling of the first "Backtrack" series of LP discs. (Amd. Compt. ¶¶ 23, 26, 28). In addition, the Amended Complaint alleges that the substantial similarity between "Backtrack" and "Flashback" was intended by defendant to create confusion as to their source. (Amd. Compt. ¶ 25) The Amended Complaint also alleges that defendant's passing off scheme is likely to and has resulted in actual confusion among radio stations and audiences as to the source of the "Backtrack" program. (Amd. Compt. ¶¶ 50, 64)

In support of its motion to dismiss Counts II and V of the Amended Complaint, defendant contends that it sufficiently distinguished "Backtrack" from "Flashback" so that no confusion could have resulted. Defendant urges that its November 3, 1987 Mailgram announcing the introduction of "Backtrack" clearly distinguished its product from "Flashback." However, I am not persuaded that the Mailgram can fairly be read to distinguish the sources of the two programs. Indeed, the defendant's statement that the producer of "Backtrack" was the "creative force" behind "Flashback" can reasonably be read to suggest that the two programs derive from the same source. When read in conjunction with that statement, the defendant's announcement that it was replacing "Flashback" with "Backtrack" fails sufficiently to overcome any likelihood of confusion as to the sources of the programs. Thus, it cannot be said in this case that no reasonable person could be confused as to the source of the defendant's program. *See Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir.1981).

In addition, plaintiffs' allegations concerning defendant's mislabelling of the first set of "Backtrack" LP's raise an issue as to likelihood of confusion sufficient to withstand a dismissal motion. Defendant urges the Court to disregard the mislabelling as an isolated and *de minimis* incident. However, accepting plaintiffs' allegations regarding defendant's scheme as true, the mislabelling may be far more significant

than a *de minimis* incident. The cases cited by defendant[3] are inapposite because they involve isolated incidents of actual confusion rather than isolated incidents of misrepresentation.

Defendant also claims that Counts II and V must be dismissed because plaintiffs have failed to allege confusion at the time of purchase. But the law does not take effect only at the point of purchase. As the Second Circuit observed in *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir.1971), the infringement statute, which originally required a showing that the alleged infringer's use "is likely to cause confusion, or to cause mistake, or to deceive *purchasers as to the source or origin of such goods or services*," was amended in 1962 to eliminate the italicized language, evincing Congress' intent to prevent confusion, mistake or deception "of any kind, not merely of purchasers nor simply as to source of origin." *Id.* at 568. Accordingly, the Second Circuit has recognized that post-sale confusion as to the source of the alleged infringer's product is actionable under the Lanham Act. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.1986).

It would be particularly inappropriate to apply a strict point-of-purchase test in the present case because, as the parties conceded at oral argument, radio stations do not acquire programming the way consumers buy pharmaceuticals. Rather, it appears that radio stations are not required to make a purchase decision when they receive programming, but instead that they barter for programming from syndicators such as Westwood One in exchange for a share of commercial time on a program. (Plaintiffs' Brief at 18, n. 5) Accordingly, the relevant question is not whether there is pre- or post-purchase confusion, but whether radio station personnel may become confused while making programming decisions.

Plaintiffs claim that defendant deliberately misrepresented the source of "Back-

track" as part of a scheme to prevent them from successfully distributing "Flashback" in 1988 by misleading radio stations into accepting "Backtrack" as part of the "Flashback" series. (Amd. Compt. ¶ 21) Essentially, plaintiffs allege that the confusion will result in unfavorable programming decisions by radio stations. Further, plaintiffs allege possible confusion among the audience for these programs. Such confusion, if proved at trial, is actionable under the Lanham Act and as unfair competition under common law. Defendant's motion to dismiss the claims of passing off under the Lanham Act and common law unfair competition is therefore denied.

*The False Advertising Claim Under Section 43(a) of the Lanham Act (Count III)*

Defendant urges the Court to dismiss plaintiffs' claim of false advertising under the Lanham Act, arguing that the alleged false representations are not actionable under Section 43(a) of the Lanham Act. Again, I must reject defendant's arguments.

Plaintiffs claim that defendant has made the following false representations:

(1) that "Backtrack" was produced by plaintiffs;

(2) that no program other than "Backtrack" will have continued access to the NBC news archives;

(3) that Andy Denemark (of Westwood One) was the original creative force behind "Flashback";

(4) that "Backtrack" is equal or superior in quality to "Flashback"; and

(5) that a "Flashback Six Pack" is included in the first installment of "Backtrack."

(Amd. Compt. ¶ 48 (a)–(e))

Defendant claims that the mislabelling of the record albums attributing the production of "Backtrack" to plaintiffs and the statement that "Backtrack" will have exclusive access to the NBC news archives are not actionable because they do not constitute advertising in the commonly under-

---

**3.** *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14 (2d Cir.1985); *Inc. Publishing Corp. v. Manhattan Magazine, Inc.*, 616 F.Supp. 370 (S.D.N.Y.1985).

stood sense of the word. But defendant takes too narrow a view of the Lanham Act's proscriptions. The Lanham Act does not apply merely to false advertising through traditional media channels, but to a broad range of deceptive statements made in connection with the sale of goods or services. *See Consumers Union of the United States, Inc. v. The New Regina Corp.*, 664 F.Supp. 753, 764 (S.D.N.Y.1987). A false statement in a label has been held to constitute false advertising under the Lanham Act because it may result in consumer confusion as to the origin or attributes of that product. *Warren Corp. v. Goldwert Textile Sales, Inc.*, 581 F.Supp. 897, 900 (S.D.N.Y.1984). Accordingly, plaintiffs' allegations regarding the mislabelling of the "Backtrack" LP's state a claim of false advertising under Section 43(a) of the Lanham Act.

Similarly, defendant's allegedly false statement regarding "Backtrack's" exclusive access to the NBC news archives appears reasonably calculated to promote "Backtrack" and to mislead consumers as to its relative merits as a nostalgia rock-and-roll program. It therefore falls within the range of misrepresentations forbidden by the Lanham Act.

Defendant argues further that the remaining two statements cited by plaintiffs —that "Backtrack" was comparable or superior in quality to "Flashback," and that Andy Denemark (of Westwood One) was the creative force behind "Flashback"— constitute mere puffing and therefore are not actionable under the Lanham Act. Taken alone, the former statement would be puffing in that it appears to be an expression of opinion and not a representation of fact. *See American Rockwool, Inc. v. Owens–Corning Fiberglas Corp.*, 640 F.Supp. 1411, 1443–44 (E.D.N.C.1986); *Wolf v. Louis Marx & Co.*, 203 U.S.P.Q. (BNA) 856, 859 (S.D.N.Y.1978). However, when read in conjunction with the other alleged misrepresentations, I cannot hold as a matter of law that the statement is not actionable. The question here is whether the statement, taken together with others assumed for the purposes of this motion to be false, would be read not as a comparison

of two products with different origins, but rather as a statement that "Backtrack" was a new and improved edition of "Flashback," issued from the same source.

The latter statement, that a Westwood One employee was the creative force behind plaintiffs' program, appears simply to be a statement of fact as to the source of the program. Accordingly, it can hardly be dismissed as mere puffing.

*The New York Civil Rights Law Claim (Count IV)*

■ Formento urges that the use of his name in defendant's false representations that he produced "Backtrack," including the mislabelling of the "Backtrack" LP's, violated Sections 50 and 51 of the New York Civil Rights Law which prohibit the unauthorized use of a person's name, portrait or picture for advertising purposes or for the purposes of trade. Defendant argues that this claim should be dismissed because the mistaken producer credit on the "Backtrack" LP's does not constitute a use of Formento's name for advertising purposes or for purposes of trade. Defendant further claims that even if the mislabelling is deemed to be for advertising or for purposes of trade, it was incidental and therefore not actionable under the Civil Rights Law.

Defendant's contentions simply do not engage the allegations in the Amended Complaint, where Formento alleges that defendant deliberately mislabelled the "Backtrack" albums for the purpose of misleading radio stations into accepting "Backtrack" as part of the "Flashback" series and to exploit the plaintiffs' goodwill and reputation. (Amd. Compt. ¶ 21) Defendant argues that mislabelling the albums to indicate that "Backtrack" was produced by Dan Formento and Radio Today did not constitute advertising under the statute because by the time the radio stations saw the labels they were already in possession of the albums so the labels could not have served any advertising function. While the mislabelling may not have constituted advertising as that term is commonly used, the Amended Complaint says

it was undertaken for the purposes of trade within the meaning of the statute. The thrust of plaintiffs' allegations is that defendant misused Dan Formento's name for the purpose of commercial exploitation, which, as defendant concedes, is the harm that the statute is meant to prevent. *See Ladany v. William Morrow & Co.,* 465 F.Supp. 870, 883 (S.D.N.Y.1978). The alleged misuse in this case does not give rise to the exemption from the statute for the reporting of matters of public interest, *see, e.g., Arrington v. New York Times Co.,* 55 N.Y.2d 433, 449 N.Y.S.2d 941, 434 N.E.2d 1319, (1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Delan v. CBS, Inc.,* 458 N.Y.S.2d 608, 91 A.D.2d 255, (2d Dep't 1983). Nor is the alleged commercial purpose sought to be achieved through the mislabelling too remote or speculative to be actionable. *See, e.g., Griffin v. Harris, Beach, Wilcox, Rubin & Levey,* 490 N.Y.S.2d 919, 112 A.D.2d 514 (3d Dep't 1985).

In addition, and although I do not accept defendant's contention that there must be public dissemination from which commercial exploitation can be inferred, even if there were such a requirement, plaintiffs have sufficiently pleaded public dissemination of the mislabelled albums insofar as the radio stations to which the albums were sent are the commercial entities that the alleged wrongful exploitation was intended to reach and influence.

Finally, I must reject defendant's argument that the mislabelling is not actionable because it constituted an incidental or fleeting use of plaintiff's name. Although incidental uses are not actionable, *see Ladany, supra; Delan, supra; Stillman v. Paramount Pictures Corp.,* 153 N.Y.S.2d 190, 2 A.D.2d 18 (1st Dep't 1956), *aff'd,* 5 N.Y.2d 994, 184 N.Y.S.2d 856, 157 N.E.2d 728 (1959), I cannot hold as a matter of law that the use in this case was merely incidental. Rather, accepting the plaintiffs' allegations as true, the mislabelling was deliberately undertaken as part of defendant's scheme to exploit commercially plaintiffs' goodwill and reputation and to pass off defendant's "Backtrack" as plaintiffs' program.

Accordingly, the motion to dismiss Formento's claim under Sections 50 and 51 of the New York Civil Rights Law is denied.

### III.

For the reasons set forth above, the defendant's motion to dismiss Count I of the Amended Complaint based on breach of contract is granted; in all other respects the motion is denied.

SO ORDERED.