**PEARSON INDUSTRIES, INC., Plaintiff,**

v.

**PET FRIENDLY, INC., Defendant.**

No. Civ.A. 98–T–1157–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 27, 1999.

Joseph Lister Hubbard, Raymond L. Jackson, Jr., Capell & Howard, PC, Montgomery, AL, Doreen L. Costa, Susan L. Robertson, Baker & Botts, LLP, New York City, NY, for Pearson Industries, Inc., plaintiff.

Robert A. Huffaker, Rachel Sanders–Cochran, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Pet Friendly, Inc., defendant.

## ORDER AND PRELIMINARY INJUNCTION

MYRON H. THOMPSON, District Judge.

Plaintiff Pearson Industries, Inc. claims in this lawsuit that defendant Pet Friendly, Inc. has engaged in unfair trade practices in violation of the Lanham Act, 15 U.S.C.A. § 1125(a)(1), and various provisions of state law. Pearson's complaint seeks declaratory, injunctive, and other relief. On December 30, 1998, the court held an evidentiary hearing on Pearson's request for a preliminary injunction, and, for the reasons set forth below, that request will be granted.

## I. BACKGROUND

The parties in this lawsuit are dogged competitors in the pet toy industry. Both are engaged in the design, manufacture, and sale of, among other things, pet toys made of multi-colored or 'variegated' rope.

In August 1995, Pet Friendly filed an application with the United States Patent and Trademark Office to obtain a registered trademark on the design of its variegated rope toys. The Trademark Examiner rejected Pet Friendly's application in March 1996 on the grounds that (a) "the public would perceive the proposed mark merely as a decorative or ornamental feature of the goods and not as an indicator of the source of the goods;" (b) "the proposed mark appears to be functional" in that it "consists of a design feature of the identified goods which serves a utilitarian purpose;" and (c) "the proposed mark is a configuration of the goods which is not inherently distinctive." [1] The Examiner also asked Pet Friendly to provide information about the designs used by its competitors, but Pet Friendly did not respond. In January 1997, the Examiner repeated and finalized its finding that Pet Friendly's proposed trademark is merely ornamental, but requested additional evidence concerning the other bases for rejection. Pet Friendly again failed to respond, and the application was deemed abandoned in July 1997.

Pet Friendly filed a second trademark application for its variegated rope toy design in December 1997. On August 18, 1998, the Trademark Examiner rejected the application on the grounds that (a) "the proposed mark is a configuration of a portion of the goods which is not inherently distinctive" because other pet toys use similar designs; (b) the mark is merely an ornamental feature of the goods; and (c) the proposed mark may be functional.[2] Pet Friendly had not replied to this latest rejection as of December 30, 1998—the date of the hearing held in this matter.

On September 1, 1998, less than three weeks after Pet Friendly's second trademark application had been denied, Pet Friendly attorneys sent Pearson the following letter charging it with trademark infringement:

"Re: Trademark Infringement and Unfair Competition

Gentlemen:

We represent Pet Friendly, Inc., of Mobile, Alabama, with respect to intellectual property matters, including litigation.

As you are undoubtedly aware, Pet Friendly, Inc. is engaged in the business of designing, manufacturing (or having manufactured for it), marketing and selling a plethora of pet products throughout the United States and elsewhere incorporating rope characterized by different colored strands. Our client has engaged in such business activities for an extended period.

As a result of the quality of our client's pet products and the considerable effort expended in promoting these products, the products have met with highly favorable acceptance. In addition, the public has come to recognize our client's products characterized by multi-colored stranded rope as a source indicator or trademark of our client. This trademark has become a symbol of our client, its quality products and its goodwill.

In recognition of our client's valuable trademark, we have filed, on behalf of our

---

1. Complaint, filed October 13, 1998, exh. 5.

2. *Id.,* exh. 6.

client, an application to register the mark with the United States Patent and Trademark Office. We anticipate that this application will mature to registration in the near future.

Your manufacture and sale of pet products incorporating multi-colored rope constitutes trademark infringement under state and federal law in that it will cause the public to mistakenly assume that your business activities originate from, are sponsored by, or are in some way associated with our client and its valuable trademark rights. For the same reasons, these activities will constitute unfair competition under state law and similarly violate § 43(e) of the United States Trademark Act, 15 U.S.C. § 1125(a), as constituting a 'false designation of origin'.

Having been apprised of our client's valuable rights, we trust that you will conduct your business activities accordingly.

Please contact us if you have any questions." [3]

Pet Friendly also sent similar 'protest' letters to other competitors in the pet toy marketplace. Despite the claims of infringement in each of the letters, Pet Friendly has not filed a trademark infringement suit against Pearson or any other maker of variegated rope toys, nor does the record disclose any other action by Pet Friendly to perfect a common-law trademark or right of exclusive use.

Shortly after the letters were sent, Pet Friendly's vice-president, Charles Weinacker, gave copies of the protest letters to Robert J. Delaney, who was then Pet Friendly's director of sales and marketing. Weinacker claims that he did so to enable Delaney to answer questions from customers and prospective customers should any arise. Delaney testified by affidavit, however, that Weinacker instructed him to use Pet Friendly's trademark claim as a sales and marketing tool. Delaney further alleges that Weinacker instructed him to use the protest letters as 'show-and-tell' devices in customer presentations to convince them to buy Pet Friendly's products. Following Weinacker's instructions, Delaney gave the Pearson protest letter to at least four bro-

kers in the industry and repeated the substance of those letters in conversations with buyers from various retail chains.

This dogfight began when Pearson filed suit against Pet Friendly in this court on October 13, 1998. Pearson's complaint seeks a declaration that Pearson's use of variegated rope in its pet toys does not infringe a Pet Friendly trademark or constitute unfair competition. The complaint also seeks a variety of injunctive and other relief aimed at stopping Pet Friendly from using the trademark infringement claim against Pearson as a sales and marketing tool.

## II. DISCUSSION

■■■ The Eleventh Circuit Court of Appeals has established a four-prong test for the district court to apply when determining whether a preliminary injunction should issue. Under this test, the movant must demonstrate: "(1) a substantial likelihood she will ultimately prevail on the merits; (2) that she will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest." *Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir.1988). As explained below, Pearson satisfies each part of the four-prong test.

### A. *Likelihood of Success*

Pearson contends that it will likely succeed in establishing that Pet Friendly has made false or misleading representations of fact in violation of § 43(a) of the Lanham Act. The court agrees.

Section 43(a) of the Lanham Act provides in pertinent part as follows:

"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of

3. *Id.,* exh. 1.

his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C.A. § 1125(a)(1).

Pet Friendly misrepresented its own goods and those of its competitor, Pearson, in the September 1, 1998, protest letter quoted above. The letter as whole is likely to mislead customers or potential customers in the pet toy marketplace into thinking that Pet Friendly's variegated rope toy products are protected by a valid and enforceable trademark and that Pearson's products are not. In fact, the issue of Pet Friendly's trademark is hotly contested, and the likelihood of Pet Friendly obtaining one in the near future is, at best, in considerable doubt given that (1) its application has been twice rejected, (2) it has not yet appealed the second rejection, and (3) it has not filed suit to secure a common law trademark. Pet Friendly has also failed to offer any evidence which would lead the court to doubt the bases for the Trademark Examiners decisions to reject its application for a registered trademark. Pearson, by contrast, has offered evidence tending to undermine Pet Friendly's claim, such as (1) the fact that Pearson began making variegated rope toys almost six years before Pet Friendly began making similar products, (2) the fact that Pet Friendly has not conducted any market surveys to test its trademark claims, and (3) the fact that Pet Friendly did not conduct a trademark availability search to determine the first use of its claimed trademark. Pearson is therefore likely to establish that the protest letter's repeated references to Pet Friendly's "trademark" on variegated rope toys constitute misleading representations of fact within the meaning of the Lanham Act.

The letter is also likely to mislead customers or potential customers into thinking that the manufacture and sale of Pearson's variegated rope toys violates federal trademark law. For the same reasons that Pet Friendly's trademark claim is infirm, so is its claim of trademark infringement. Thus, Pearson is likely to establish that the protest letters' repeated references to trademark infringement constitute misleading representations

of fact within the meaning of the Lanham Act.

■ Pearson is also likely to establish that Pet Friendly used misrepresentations in commercial advertising or promotion within the meaning of the Lanham Act when it used the protest letter as a sales and marketing tool. By its own admission, Pet Friendly gave the protest letters to its director of sales and marketing to answer questions from customers and prospective customers. The director's unrebutted testimony indicates that Pet Friendly used the letter to Pearson as a sales and marketing tool designed to discourage its customers and/or prospective customers from buying variegated rope toys from any company other than Pet Friendly. This activity constitutes "commercial advertising or promotion" within the meaning of § 1125(a)(1). *See Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005, 1019–21 (S.D.N.Y.1994); *see generally, Fuente Cigar, Ltd. v. Opus One*, 985 F.Supp. 1448, 1454–56 (M.D.Fla.1997) (discussing the meaning of "commercial advertising or promotion"), and cases cited therein; *Radio Today, Inc. v. Westwood One, Inc.*, 684 F.Supp. 68, 74 (S.D.N.Y.1988) ("The Lanham Act does not apply merely to false advertising through traditional media channels, but to a broad range of deceptive statements made in connection with the sale of goods or services.").

The court therefore concludes that Pearson has demonstrated a substantial likelihood of success on its claim under the Lanham Act.

### B. *Irreparable Harm*

■ Pearson contends that it has suffered and will continue to suffer irreparable harm as a result of the false or misleading statements contained in the September 1, 1998, protest letter. In particular, Pearson alleges injury to its goodwill and reputation in the pet toy industry and cites the threat of injury to its market share and customer base. Such harms, by their very nature, are not easily measured or redressed by money damages and are thus "common venues for the issuance of a preliminary injunction," *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir.1998) (citation omitted). *Ferre-*

*ro v. Associated Materials, Inc.,* 923 F.2d 1441, 1449 (11th Cir.1991); *Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir. Unit A Feb. 1981).[4]

The court is convinced that Pet Friendly's further use of the protest letter as a sales and marketing tool will almost certainly create losses that cannot be compensated by money damages. Pearson has demonstrated, or is likely to demonstrate, that the letter contains misrepresentations of fact about its own products and those of its competitor, Pet Friendly. These misrepresentations will unduly enhance the good will and reputation of Pet Friendly at the expense of the good will and reputation of Pearson Industries and other manufacturers of variegated rope toys. The court therefore concludes that Pearson will suffer irreparable injury in the absence of injunctive relief.

### C. *Weighing the Injuries*

Pearson contends, and the court agrees, that the equities in this case militate strongly in favor of granting a preliminary injunction. Pearson faces irreparable harm in the absence of a preliminary injunction. Pet Friendly, for its part, has not alleged that it will suffer any such harm if enjoined from using the protest letter as a sales and marketing tool.[5] The injuries that would be inflicted on Pearson by the continued circulation of the protest letter in the pet toy marketplace thus far outweigh whatever damage, if any, the preliminary injunction my cause Pet Friendly.

### D. *The Public Interest*

The court also finds that Pearson has satisfied the fourth and final requirement for preliminary injunctive relief by showing that an injunction in this case would not be adverse to the public interest. The Eleventh Circuit has observed that "the public interest in preventing confusion around the marketplace is paramount." *SunAmerica Corp. v.*

*Sun Life Assurance Co. of Canada,* 77 F.3d 1325, 1336 (11th Cir.1996) (quoting *Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc.,* 934 F.2d 1551, 1564 (11th Cir.1991)). Injunctive relief here will promote free and fair competition in the dog-eat-dog pet toy industry and prevent further confusion in the marketplace as a result of Pet Friendly's unsubstantiated trademark claims.

## III. CONCLUSION

For the foregoing reasons, it is the ORDER, JUDGMENT and DECREE of this court as follows:

(1) Plaintiff Pearson Industries, Inc.'s request for a preliminary injunction, filed contemporaneously with its complaint on October 13, 1998, is granted.

(2) The defendant Pet Friendly, Inc. and its officers, agents, servants and employees, and those persons in active concert or participation with it or who receive actual notice of this order by personal service or otherwise, are PRELIMINARILY ENJOINED and RESTRAINED from

(a) disseminating the September 1, 1998, protest letter (attached as exhibit 1 to Pearson's original complaint) or the substance thereof to customers or prospective customers in the pet toy marketplace; and

(b) making future false or misleading representations about its own or Pearson's variegated rope toy products to customers or prospective customers in the pet toy marketplace.

The clerk of the court is DIRECTED to issue a writ of injunction and to serve a copy of this order and injunction on defendant Pet Friendly, Inc. by certified mail, return receipt requested.

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**5.** Pet Friendly does claim, however, that it would be injured if enjoined and restrained from further pursuit of its trademark claims against Pear-

son and other competitors in the pet toy industry. The court issues no such injunction today. Although the court doubts whether Pet Friendly will ultimately succeed in its trademark claims, the injunction issued today does not prevent Pet Friendly from pursuing those claims in an appropriate forum. It merely prevents Pet Friendly from using an unsubstantiated and therefore misleading legal claim as a sales and marketing tool against Pearson Industries.

It is further ORDERED that the injunction shall be vacated unless plaintiff Pearson Industries, Inc. posts a bond in the amount of $25,000.00 with the clerk of the court by no later than the close of business on January 28, 1999. Said bond shall be posted during the duration of the preliminary injunction entered by this order for "the payment of such costs and damages as may be incurred or suffered by" defendants Pet Friendly, Inc. or other persons restrained by the preliminary injunction. Fed.R.Civ.P. 65(c). Withdrawal of such bond will automatically terminate the obligations of persons enjoined by said preliminary injunction.